THE CHICAGO SOUTHERN RAILWAY COMPANY

*v.*

WILLIAM T. NOLIN.

*Opinion filed April 17, 1906.*

EMINENT DOMAIN—*extent to which danger of fire and to live stock may be considered.* In estimating the damages to farm land not actually taken for a railroad right of way it is proper for the jury to consider the increased risk of loss from fire and the increased danger to live stock, if, and in so far as, the market value of the land not taken is thereby depreciated; but the jury cannot anticipate future damages from such causes and allow therefor in their verdict.

APPEAL from the County Court of Iroquois county; the Hon. FRANK HARRY, Judge, presiding.

Appellant, the Chicago Southern Railway Company, filed a petition in the county court of Iroquois county for condemnation of a strip of land across the farm of William T. Nolin, the appellee, which is situated in Iroquois county. The strip extends north and south through the farm. The south 950.7 feet of the strip is 200 feet in width and the balance is 100 feet in width. Nolin filed a cross-petition, praying that damages to the balance of the farm, caused by the location, construction and operation of the railroad, be ascertained and awarded to him in said proceeding. A trial was had before a jury and a verdict returned awarding Nolin $1527.63 as compensation for the land proposed to be taken and $5000 as damages to the balance of the farm. The court entered an order and judgment authorizing the railway company to take possession of the strip of land described in its petition upon payment to Nolin of the respective sums awarded to him by the verdict of the jury. The railway company appeals to this court.

The farm of appellee consists of 348 acres in a compact body. The proposed right of way extends through the mid-

dle of the farm, leaving approximately 163 acres on the east side thereof and 174 acres on the west side. The right of way itself takes 11.751 acres. The farm has been used for a number of years by Nolin for raising registered stock and is well adapted for that purpose. Sugar creek, which supplies water for stock purposes, runs across the south-east corner of the farm but does not touch any of the land west of the proposed right of way, and there is no water for stock on that side. Numerous frame buildings are located on the farm. On the right of way are a large corn-crib, with a capacity of over 10,000 bushels of grain, a covered feed-rack and a scale house. It was agreed upon the trial that the jury should award $500 as damages to the land not taken on account of the expense of removing these buildings from the right of way, and by stipulation it was agreed that Nolin should retain the ownership of these buildings, and should have until June 10, 1905, to remove them from the right of way. Commencing 125 feet east of the right of way and extending east for a distance of about 500 feet are numerous frame buildings, consisting of a sheep barn, horse barn, cattle barn, granary, buggy shed, tool house, residence, smoke house, hog house and poultry houses. The barns, sheds and granary are connected with feed-lots. The feed-lot surrounding the cow barn contains a grove, consisting of about one hundred and sixty walnut, oak, wild cherry and locust trees. These trees furnish shade and protection for the stock. The right of way takes part of this feed-lot and about seventy of the trees. Two houses for tenants are on other parts of the farm, one being about 250 feet west of the right of way and the other in the north-east corner of the farm.

The petitioner stipulated that it would construct two farm-crossings on its right of way on the farm at certain designated points; that it would extend certain tiling, which terminates west of its right of way, so that water emptied from the tile would not be obstructed by the right of way; that it would construct a bridge over Sugar creek immedi-

ately south of Nolin's farm, with such spans as may be required by law in order not to unnecessarily impair the usefulness of the stream, and that it would erect a legal fence on each side of the strip as soon as rails were laid on the right of way.

The jury viewed the premises before returning their verdict.

It was stipulated before trial that the fair cash market value of the land taken is $130 per acre, amounting in the aggregate to $1527.63, which is the amount awarded therefor by the jury. The only controversy in the case relates to the damages to the remainder of the farm.

Appellant assigns as error the action of the trial court in refusing to exclude the testimony of certain witnesses for appellee, the giving of appellee's fourth and ninth instructions, and the refusal to give appellant's first, second and third instructions.

J. L. O'DONNELL, T. F. DONOVAN, and MORRIS & HOOPER, (RITSHER, MONTGOMERY & HART, of counsel,) for appellant:

Danger to persons, teams and stock from crossing the right of way of a railway is not an element of damage to land not taken. *Railway Co.* v. *Freeman,* 210 Ill. 270; *McReynolds* v. *Railroad Co.* 106 id. 154; *Conness* v. *Railroad Co.* 193 id. 464; *Railroad Co.* v. *Eaton,* 136 id. 9.

Damage by fire communicated through the negligence of a railway company is not a proper element of damage to be assessed to land owners in a proceeding to condemn. *Jones* v. *Railroad Co.* 68 Ill. 380; *Railway Co.* v. *Freeman,* 210 id. 278.

DYER & WALLBRIDGE, and O. F. MORGAN, for appellee:

Damages awarded by the jury in condemnation proceedings will not be disturbed where the evidence is conflicting and the jury have viewed the premises. *Railway Co.* v.

221—24

*Lyons,* 159 Ill. 576; *Railroad Co.* v. *Brewing Co.* 174 id. 547; *Brown* v. *Railway Co.* 209 id. 402; *Railroad Co.* v. *Blake,* 116 id. 163; *Stockton* v. *Chicago,* 136 id. 434; *Conness* v. *Railway Co.* 193 id. 464.

The jury may consider the inconvenience of carrying on a farm divided by a railroad or incidentally produced as to dividing the land, as to water, pasture and improvements, although such injury may not be susceptible of definite ascertainment, and also for such incidental injury as would result from the perpetual use of the tracks for running trains, or from danger of killing stock, or escape of fire, and generally such damages as are reasonably probable to ensue from the construction and operation of the proposed railroad, in so far as they may affect the market value of the land in question. *Railroad Co.* v. *Bowman,* 122 Ill. 595; *Railway Co.* v. *Aldrich,* 134 id. 9; *Railway Co.* v. *Greiney,* 137 id. 628; *Railway Co.* v. *Bloom,* 137 id. 449; *Railway Co.* v. *Nix,* 137 id. 141; *Railroad Co.* v. *Turner,* 194 id. 575.

Mr. JUSTICE SCOTT delivered the opinion of the court:

At the close of all the evidence in the case the petitioner moved the court to exclude from the consideration of the jury the testimony of one Lockhart, a witness who testified on behalf of Nolin as to the damages to lands not taken, for the reason that he included in his estimate improper elements of damages. The motion was denied. The same motion was made as to the testimony of other witnesses who testified on Nolin's behalf. Petitioner here contends that it was error to overrule these motions. These witnesses, after testifying on their direct examination to an amount that the portion of the farm not taken would be depreciated in value by the taking of the strip for railroad purposes, in answer to questions propounded on cross-examination stated that in fixing such amount they had taken into consideration, among other things, the increased danger from fire and the danger to live stock from the operation of the proposed railroad.

It is also urged that the court erred in giving to the jury the defendant's fourth instruction, which told the jury that the measure of damages to the lands not taken would be "the difference in their fair cash market value before the construction of the road and after its construction," and that in fixing such damages, if any, the jury might take into consideration, among other things, the danger to live stock and the danger of the escape of fire attendant upon the operation of the railroad, in so far as it appeared from the evidence and the view of the premises that such dangers, or either of them, would depreciate the fair cash market value of lands not taken.

The objection urged to this instruction and to the evidence mentioned above is that both included improper elements, namely, the danger to live stock and the increased risk of loss from fire.

It has been often decided by this court that the only question for the determination of the jury, so far as land not taken is concerned, is the amount, if any, of its depreciation in market value, and if the danger of loss from fire or the danger of loss by the killing or injury of live stock in fact depreciates the value of land not taken, such dangers, singly, together, or in connection with other like matters, afford a proper basis upon which a witness may estimate damages, and are proper elements to be considered by the jury in determining whether the land not taken will actually be depreciated in market value, and, if so, to what extent.

In the case of *Chicago, Peoria and St. Louis Railway Co.* v. *Greiney,* 137 Ill. 628, it is said (p. 633): "The recovery can only be for the depreciation in the market value of the land not taken, and the jury were expressly told, in an instruction given at the instance of appellant, that they were 'not authorized by law to allow anything, by their verdict, by reason of any supposed damage to stock from the use of said right of way for railroad purposes, or for damage to the person of the land owner or any member of his family, or the damage to stock by reason of the taking

and subsequent using of said right of way; that the law considers the probable damage to stock or to the family of the land owner as' too remote and speculative to be considered in estimating the just compensation to be paid for such right of way.' A depreciation in the market value of the land is quite a different thing, and whether that is because of the inconvenient shape of fields, non-access from one part to another caused by the building of the road, or from injuries anticipated to property from its operation, the result is the same, and is solely because of the building and operating of the road, and therefore to be compensated for by the appellant. The material inquiry is the fact of depreciation in market value, but it is within the province of the jury to inquire whether the facts thus recited exist, and if they exist, whether they cause a depreciation, and, if any, its extent, in the market value."

That the jury may consider whether or not the danger of fire from passing engines will depreciate the value of land not taken has been expressly held to be the law in each of the following additional cases: *Keithsburg and Eastern Railroad Co.* v. *Henry,* 79 Ill. 290; *Chicago, Paducah and Memphis Railroad Co.* v. *Atterbury,* 156 id. 281; *Illinois, Iowa and Minnesota Railway Co.* v. *Ring,* 219 id. 91. These authorities conclusively settle the question in this State.

On the other hand, the law is, and it is proper to instruct the jury, that the railroad company is bound to use the best engines, equipped with the most improved appliances to prevent the escape of fire and consequent damage or loss resulting therefrom, and that for negligence in that regard the company would thereafter be responsible, and the jury should not consider any loss or damage that may arise from such negligence in arriving at a verdict, (*Jones* v. *Chicago and Iowa Railroad Co.* 68 Ill. 380; *Chicago, Peoria and St. Louis Railway Co.* v. *Greiney, supra; Chicago, Peoria and St. Louis Railway Co.* v. *Eaton,* 136 Ill. 9; *Illinois, Iowa and Minnesota Railway Co.* v. *Freeman,* 210 id. 270;) and

in the case at bar an instruction to this effect was given by the court at the request of the petitioner. The distinction is this: It is proper for the jury to consider the increased risk of loss from fire and the increased danger to live stock if, and in so far as, the market value of land not taken is thereby depreciated; but it is not proper for the jury to anticipate damages of any character which may, but will not certainly, result from the operation of the railroad and allow anything by their verdict for such anticipated damages. Damages which may in the future follow upon the happening of some possible but uncertain event are not for their consideration. Whether the value of the land not taken will be depreciated in the market by increased danger from fire or by increased danger to live stock is for their consideration.

It follows that the motions to strike out the testimony were properly overruled, and that there was no error in giving the fourth instruction.

The same objections as are urged to defendant's fourth instruction are urged to his ninth instruction, and in addition it is said that by the ninth the jury were authorized to base their judgment in reference to the amount of the depreciation in the market value of the land not taken upon a consideration of the ordinary and usual manner of the operation of the road, and it is said that this left it to the jury to determine what would be the ordinary and usual manner of the operation of this road. We think this objection without merit. The jury, from their general knowledge, would know the ordinary and usual manner of operating railroads in this State, so far as material in this cause, and it was proper to instruct them on the basis that they possessed such knowledge.

Complaint is made of the refusal of the first and second instructions asked by petitioner. Each stated an accurate proposition of law and might well have been given. The substance of the first, however, is contained in the twentieth instruction given at the request of the petitioner, while the

proposition embodied in the second is also found in the twenty-third instruction given at the request of the petitioner.

We think petitioner's third instruction was properly refused, for the reason that it might have led the jury to disregard the effect, if any, of the danger to live stock from passing trains, on the market value of defendant's lands not taken.

The judgment of the county court will be affirmed.

*Judgment affirmed.*