(No. 23141.—▮▮▮▮▮▮▮▮)

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellant, *vs.* BOYD E. HUBBARD *et al.* Appellees.

*Opinion filed February 14, 1936—Rehearing petition stricken April 8, 1936.*

S. Donald Crowell, State's Attorney, and Roy F. Hall, for appellant.

B. A. Knight, for appellees.

Mr. Chief Justice Stone delivered the opinion of the court:

The Department of Public Works and Buildings filed a petition in the county court of Ogle county to condemn certain lands owned by appellees for the construction of a portion of the proposed State highway Route No. 77, extending from Route 70, in Ogle county, westerly toward Oregon, a distance of approximately six and one-half miles. Appellees filed a cross-petition asking damages to land not taken. The cause was first tried before a jury, and on appeal to this court the judgment was reversed and the cause

remanded. (*People* v. *Hubbard,* 355 Ill. 196.) The second trial was had before the county judge of Lee county, sitting in the county court of Ogle county, without a jury. The department appealed from the judgment entered on that hearing. Some of appellees have filed a cross-appeal.

The grounds of the appeal are, that the awards were excessive and that the trial court took into consideration improper elements of damage for land taken and to land not taken. There are twelve different tracts involved in this appeal, the largest of which contains four and nineteen-hundredths acres and the smallest three-hundredths of an acre. On some of the tracts taken there were trees and hedge or wire fences. There were buildings on one tract. In computing damages the trial judge included the value of existing fences and as to some of the tracts computed the cost of new fences and maintenance thereof. This is assigned as error. It is also urged that it was error for the trial judge to consider as damages to land not taken the necessity for crossing the highway where the road divides appellees' lands. Evidence was heard as to the value of hedges on land taken and such value considered as damages. Appellant argues that these hedges were of a height prohibited by law and so were illegal hedges, and that appellees owning such hedges were not entitled to damages for the taking thereof.

Section 9 of the Eminent Domain act provides that the owner of property taken shall receive full compensation therefor and that no benefits or advantage which may accrue to property or lands affected shall be set off or deducted from such compensation, (Smith's Stat. 1935, p. 1560,) though the court may consider any special benefit accruing to property not taken, for the purpose of reducing or balancing damages. (*Department of Public Works* v. *Caldwell,* 301 Ill. 242; *City of Chicago* v. *Mecartney,* 216 id. 377.) The measure of compensation for land not taken by the improvement is the difference between the fair

cash market value of such property before and after the improvement. (*Illinois Power Co.* v. *Wieland,* 324 Ill. 411; *Brand* v. *Union Elevated Railroad Co.* 258 id. 133.) Compensation for land taken is to be estimated on the value of the land as land, with all its capabilities. If there are buildings or timber on it, or coal, oil or other minerals under the surface, they are to be considered so far as they affect the value of the land though they may not be valued separately. (*Forest Preserve District* v. *Chilvers,* 344 Ill. 573; *Forest Preserve District* v. *Caraher,* 299 id. 11.) Owners of land not taken are entitled to compensation for the cost of constructing and maintaining additional fences as such on such land, but are entitled to have such cost considered only in so far as it shows damage to land not taken. *Department of Public Works* v. *Caldwell, supra; Board of Trade Telegraph Co.* v. *Darst,* 192 Ill. 47.

Evidence was offered and received of the cost of building·and maintaining fences along the proposed highway. Appellant argues that the court had no right to consider the cost of new fences in those cases where, in computing the damage for land taken, the value of fences then on the land taken was considered and such new fencing merely replaced that taken. The rule is that the cost of construction and maintenance of additional fences made necessary by the improvement constitute a proper element in determining damages to land not taken. In those cases where the land owner, before the road is laid out, is required to maintain a highway or division fence and such fence is taken in the improvement, he is entitled to have considered as an element of damages to land not taken the cost and maintenance of only such additional fence beyond the amount originally required of him as is necessitated by the improvement. Thus if, prior to laying out the road, he was required to maintain 3000 feet of fence along the highway or as a division fence, which fence was taken, and he is by reason of the improvement required to maintain there-

after 3500 feet of fence, he is entitled to have considered the cost of building and maintaining the additional 500 feet, not as of itself a specific damage but as an element of the damages to land not taken. (*Department of Public Works* v. *Griffin,* 305 Ill. 585.) This is so because, having been paid for the fence which he was originally required to build and maintain on the land taken, he is not damaged if he be required to maintain only a like amount of fence by reason of the new highway. It is not the purpose of the constitutional provision for compensation for the taking of private property for public use that the land owner shall be put into a better position than he was before his land was taken. The purpose of the constitutional provision is to make him whole. *Department of Public Works* v. *Caldwell, supra,* does not in any way conflict with this view. In that case the land owner was held entitled to have considered, so far as it showed damages to land not taken, the cost of constructing and maintaining the new fence in that case required. The fence there under consideration, and which the land owner was compelled to build, was one not theretofore required of him, for the highway was laid out along the right-of-way of a railroad and the fence mentioned at the time was one which the railroad company was required to build and maintain. He was therefore held to be entitled to have considered, as an element of damage to land not taken, the cost of building and maintaining such new fence.

It is also the rule in cases where lands are separated by the highway passing through them, that damages resulting from that fact which affect the value of lands not taken may be shown. Such damages may not be speculative, however. To entitle a claimant in a condemnation proceeding to compensation for lands not taken he must prove by competent evidence that there has been some direct physical disturbance of a right, either public or private, which he enjoys in connection with his property, and

that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. Such damages must be direct—not such as are merely possible or such as may be conceived by the imagination. *Illinois Power Co.* v. *Wieland, supra; Illinois Power and Light Corp.* v. *Peterson,* 322 Ill. 342; *Illinois Power and Light Corp.* v. *Talbott,* 321 id. 538.

The trial court also apparently considered as an element of damages to land not taken of some of appellees, the danger of crossing the paved highway, and the inconvenience and expense of driving livestock across it from one field to the other. Evidence of damages based in part on those elements was received. While it may be said, generally, that danger in crossing a highway is too remote and speculative to be considered as an element of damages to land not taken, yet where there is specific evidence of danger of loss by killing livestock or inconvenience and expense in herding them across the highway, and where such danger or inconvenience in fact depreciates the value of land not taken, such become a proper element to be considered in determining the damage to land not taken. (*Chicago Southern Railway Co.* v. *Nolin,* 221 Ill. 367; *Illinois, Iowa and Minnesota Railway Co.* v. *Ring,* 219 id. 91; *Chicago, Burlington and Northern Railroad Co.* v. *Bowman,* 122 id. 595.) In *Chicago Southern Railway Co.* v. *Nolin, supra,* it was said: "It is proper for the jury to consider the increased risk of loss from fire and the increased danger to livestock if, and in so far as, the market value of land not taken is thereby depreciated. * * * Damages which may in the future follow upon the happening of some possible but uncertain event are not for their (the jury's) consideration. Whether the value of the land not taken will be depreciated in the market by increased danger from fire or by increased danger to livestock is for their consideration."

While the cases just cited involve the taking of land for a railroad right-of-way, yet with modern paved highways and high-speed automobiles which traverse them at more frequent intervals and frequently at greater speed, and with less warning than trains traverse a railroad track, such dangers, inconvenience and cost of additional assistance in driving livestock across the highway no longer remain in the realm of speculation and conjecture, but when considered as an element of damage to lands not taken may be the subject of definite proof. Such proof was competent.

Evidence of the value of certain hedge fences along the highway and which were on land taken was also received and considered. It is also in evidence that these hedges were from twenty-five to thirty feet in height, and appellant argues that they were unlawful hedges and therefore not such as appellees owning them were entitled to compensation for. Under the statute, (Ill. State Bar Stat. 1935, chap. 54, secs. 3, 22,) division line hedge fences and those along the highway are required to be kept at a height of five feet, with certain exceptions not material here. The elements upon which some witnesses based their opinions of the value of these hedges were hedge posts, shade, nesting places for birds and as windbreaks. While it may be said that there was actual value in said hedge as fence posts, in so far as they contained such, it surely cannot be said that loss of shade, windbreaks or as nesting places for birds may entitle the owner to damages where such hedge constitutes an unlawful fence. The value of these hedges as nesting places for birds and for shade were by some witnesses placed so high as to bring their testimony within the realm of absurdity.

Without discussing in detail the evidence concerning the values of the various tracts taken, twelve in number, or damages to land not taken, it is evident, from the discussion herein had that the trial court in fixing such damages took into consideration elements that cannot properly be

106

made a basis of such damages. Among such elements of damage considered by the court to land not taken in addition to those herein discussed, were the passing of cars, undesirable persons coming to the house, and the like. Such damages are not special but are such as the public generally are required to bear. It is evident that eliminating the improper elements of damage the judgment could not have been as high as fixed by the court. Without a fuller discussion of the evidence, it is our purpose only to outline herein the character of proof upon which damages in such a case as this may be assessed. For reasons herein stated the damages were excessive.

The judgment of the county court is reversed and the cause remanded to that court for a new trial.

*Reversed and remanded.*