(No. 24704.—

THE ILLINOIS IOWA POWER COMPANY, Appellant, *vs.* ADOLPH RHEIN *et al.* Appellees.

*Opinion filed October 17, 1938—Rehearing denied Dec. 8, 1938.*

586

PRESTON K. JOHNSON, for appellant.

TURNER, HOLDER & ACKERMANN, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

This cause originated in the county court of St. Clair county. It was a proceeding by appellant under the name of Illinois Power and Light Corporation, since changed to Illinois Iowa Power Company, a corporation, to acquire, by condemnation, a right of way through eighteen separate tracts of land for a high-power electric transmission line. The causes were consolidated and, upon the trial, a judgment was rendered for each appellee for damages, from which appellant has taken an appeal directly to this court.

Appellees filed answers in the lower court denying the authority of appellant to maintain eminent domain proceedings, and have prosecuted a cross-appeal raising that issue. The questions coming to this court are: First, did the appellant have the power to maintain the proceeding, and, second, if it did have such power, was there any error in the conduct of the trial fixing the amount of damages for each appellee.

The appellant determined that a new power line carrying 66,000 volts was necessary for furnishing additional service in St. Clair county and vicinity. It took the steps necessary to acquire authority for the erection of such a line and to procure a right of way therefor between Fayetteville and Belleville, in said county, by filing an application

with the Illinois Commerce Commission for a certificate of convenience and necessity.

There were two of these applications filed; one, designated as cause No. 25163, and the other as cause No. 25503. It is claimed by appellees, in their cross-appeal, that appellant, having acquired the authority to exercise eminent domain in cause No. 25163, was without authority to exercise the right in cause No. 25503. The history of these two applications as shown by the record is as follows: On October 26, 1936, appellant filed with the Illinois Commerce Commission, an application for a certificate of convenience and necessity to construct, operate and maintain a 66,000-volt electric transmission line commencing at a point along the southwesterly edge of the city of Belleville and extending southeasterly approximately fifteen miles to the village of Fayetteville. On November 24, 1936, a finding and order was made by the commission that the certificate sought be granted. On the same date, certain objections were made known to the commission. Thereafter, on December 9, 1936, the above order was vacated and set aside, but the commission retained jurisdiction of the subject matter. Another hearing was had, and, on January 14, 1937, a new order was made by the commission granting a certificate of convenience and necessity for the construction, operation and maintenance of a transmission line along said route. On February 17, 1937, a petition was filed by the objectors for a rehearing. On the same date, the cause was reopened on the commission's own motion and set for hearing. After various continuances, the case was called for hearing and heard by the examiners but no other order was ever made in the cause. This proceeding (No. 25163) did not involve any of the lands of appellees.

The second application, in cause No. 25503, was filed by appellant March 8, 1937, and on April 13 a certificate of convenience and necessity was granted as prayed. On July 7, following, a supplemental application was made by

appellant giving a detailed description by metes and bounds of the property it sought to acquire for a right of way, and an order was granted thereon by the commission July 28, 1937. The petition for condemnation filed in the county court had attached, as exhibits, the order and supplemental order entered in cause No. 25503, as a part thereof. The route described in this application and order runs northwest from Fayetteville to a point south of Belleville and then north to the city of Belleville. It runs through a territory generally to the south and west of the territory proposed to be traversed by the route described in cause No. 25163.

At the time the first condemnation proceeding against an individual appellee was filed on September 11, 1937, and also when the last was filed on October 15, 1937, the order granting a certificate in cause No. 25503 was in effect, but as stated above, no such order then existed in cause No. 25163. The first question, therefore, to be determined, is whether the objection of appellee to appellant's maintaining its proceeding for condemnation should be sustained.

Appellees, in support of their cross-appeal, first contend that the commission has no power to permit a certificate of convenience and necessity to continue in force, and at the same time allow the filing of a new petition and issue a new certificate for the same purpose. We find no statutory provision on this point except chapter 111⅔, (Ill. Rev. Stat. 1937, p. 2491,) in which section 55, among other things, provides: "Such certificates may be altered or modified by the commission upon its own motion or upon application by the person or corporation affected." The record shows that on the filing of the petition for rehearing in cause No. 25163, on February 17, 1937, the case was reopened upon the commission's own motion, and so far as appears from the record nothing more has ever been done in that case. Not only was this proceeding suspended, but the subsequent issuing of an order in cause No. 25503 constituted such an alteration or modification as was authorized by the statute above cited.

Appellees next assert that the action of the commission in issuing its certificate in cause No. 25503 was arbitrary and unreasonable. *Hitt* v. *Department of Public Works,* 336 Ill. 306, holds that arbitrary action in determining the location of a State road may be restrained, and in *Department of Public Works* v. *Schlich,* 359 Ill. 337, it was held that the arbitrary action of the department in changing the route of a public highway after the right of way had been acquired, a part of the work done, and funds in aid furnished by a village expended, estopped the department from changing the route and acquiring a new right of way by condemnation. In both of these cases, evidence was introduced of facts and circumstances tending to show arbitrary action. In the case at bar, no such facts are shown. The proof offered was that the proceeding in cause No. 25163 would, had the order therein not been suspended, authorize a transmission line similar to that permitted in cause No. 25503, but following a different route. We do not think this proves arbitrary action or an excess of authority since the statute gives the commission authority to alter or modify certificates of convenience and necessity.

The cases above referred to involve a department that not only had the power to locate a road but also possessed, independently, the right of eminent domain to acquire the right of way. In the case at bar, the petitioner does not have the right of eminent domain until the commission issues its certificate. Therefore, the real point made by appellees is that the commission, in granting a new application, acted in an arbitrary manner. No cases have been cited that the exercise of discretion on the part of the commission in granting such a certificate, constitutes arbitrary action justifying interference by the courts. The effect of the certificate issued was a determination that the building of a power line was a question of public concern, and the exercise of the right given to the commission to recall the certificate in cause No. 25163 and issue a new certificate between the same *termini* but by a different route.

The necessity for the improvement requiring condemnation, and the manner of its construction, are for the consideration of the condemnor, subject to the decision of the commission as to convenience and necessity, and will not be reviewed by the courts unless, perhaps, for a gross abuse of discretion. *East Peoria Sanitary District* v. *Toledo, Peoria and Western Railroad,* 353 Ill. 296.

Where the legislature has delegated to a corporation the authority to exercise the power of eminent domain, the corporation has also the right to decide on the necessity for exercising the right, and its decision will be conclusive in the absence of a clear abuse of the right, and the courts cannot inquire into the necessity or propriety of its exercise. (*Chicago North Shore and Milwaukee Railroad Co.* v. *Chicago Title and Trust Co.* 328 Ill. 610.) The general rule is that where the right of eminent domain is granted, the question of the necessity of its exercise, and in what cases it may be exercised, within constitutional restrictions, is a legislative and not a judicial question, and its exercise is not a proper subject for judicial interference or control unless to prevent a clear abuse of such power. (*Department of Public Works* v. *McCaughey,* 332 Ill. 416.) These cases all go to the point that where both the exercise of the power of eminent domain and the determination of the purpose of such exercise is vested in the same corporation, a clear abuse of power must be shown before the right will be denied. In the case before the court, it requires the concurrent action of the petitioner and the commission to vest the power of eminent domain and the selection of the route, and it would seem that the rule announced in the foregoing cases would apply equally well to the instant case.

It is not sufficient to say that the route approved in cause No. 25163, even if satisfactory in the first instance, became binding to the extent that a different route could not be selected, and, if authorized, the commission's action would become arbitrary merely because the route was changed.

Appellees next urge there is no proof in the record that the route described in the last order passed over the lands of each of the defendants. On this proposition, the witness, Dowd, who had charge of securing the rights of way and who had had twelve years' experience in that work, testified he was thoroughly familiar with the location easement and of the properties of the parties to the suit, and that he checked all descriptions and knew the particular location of each tract. This, in the absence of any proof to the contrary, is sufficient to identify the right of way as the one affecting the appellees.

We think the cross-appeal is without merit and should be dismissed.

On the question raised by the petitioner appellant, the evidence is substantially as follows: Eighteen petitions for condemnation for right of way across eighteen tracts were filed and consolidated, and tried as one case. The right of way is sixty-six feet in width. The line consists of three copper wires conducting current, and a fourth wire for the purpose of grounding the current. The wires will be supported on two-pole structures or steel towers located five hundred fifteen feet apart. The poles will be fourteen feet apart in two-pole structures and twenty-five feet apart in four-pole structures. The base of the structures will be placed in the ground eight to nine feet and set in concrete. At intervals of two or three miles, four-pole structures will be placed to strengthen the line. The cross-arms will be twenty-eight feet long, the wires attached to insulators and protected by all safety devices known to the electrical industry. Subject to the right of occupancy by the structures as well as operation and maintenance, the owners will have the use of the land. The right of way will be cleared and kept free of trees and obstructions. The clearance of the wires above the ground at their lowest point will be about thirty feet. For about five and one-half miles south of Belleville, the line runs substantially

in a north and south direction across the various tracts; from that point it runs in a southeasterly direction, going across several tracts at an angle.

Cross-petitions were filed alleging damages to the land on the right of way not occupied by the structures, and to the balance of the land outside the right of way. The resulting damages charged consist of inconvenience, loss of time in cultivating, loss of part of crops, and depreciation in value by reason of the location and construction of the power line. The evidence is very conflicting, with a tendency on the part of appellant's witnesses to minimize the damages, and on the part of the defendants to magnify them.

The real estate men placed upon the stand by petitioner testified to values of $60 to $75 an acre for the better land and $35 an acre for the poorer land. Two of the tracts of land were valued by one witness for the petitioner as high as $100 an acre. Witnesses for defendants valued the land from $60 an acre to, in some instances, as high as $175 an acre, generally around $125 an acre. Sales of land in the neighborhood in 1937, were shown at $125, $135, $101, $108, $80, $85, $81, and $175 per acre. Witnesses for the petitioner testified there would be no damage to the land not taken, and not within the right of way, and witnesses for the defendants testified to damages ranging from $25 an acre to thirty or forty per cent of the present value of the land. Previous to the taking of testimony, the jury viewed the premises.

A great variety of matters of inconvenience and damage was proven by the several owners; interference with the checkwire in planting, getting corn rows out of check or shortening the wire at the point where the structure interferes with it; weeds growing around the pylons and the blowing of seeds across the fields; loss of time in plowing, reaping, cultivating, and working around the towers; the danger of chinchbugs and grasshoppers propagating in the

grass and weeds around the base of the towers, and the claim that, if improperly checked, some corn would be plowed up, and if cultivated by the drilling method, there would be a smaller yield. Based upon these elements, witnesses testified to the lessening in sale value of the land not taken.

An analysis of the evidence shows that the structures on the lands varied from one to seven in number, that the total area in the whole eighteen tracts occupied by structures was approximately one acre, and that the value fixed for the land actually taken varied from $75 to $110 for different tracts; that the damages allowed for the land on the right of way not used for structures, were fixed at one-half the cash value of the land, and the damages allowed for lands not taken averaged, approximately, $7.50 an acre. There was a total of 1365 acres of land involved, exclusive of the land in the right of way, and the damage allowed to this land not taken was fixed, in the aggregate, at $10,181.

There is no doubt that, in order to claim compensation for lands not taken, there must be some proof of a physical disturbance of a right, either public or private, which the landowner enjoys in connection with his property, and that, by reason of such, he has sustained special damage in excess of that sustained by the public generally. *Department of Public Works* v. *Hubbard,* 363 Ill. 99.

It is claimed by appellant that the facts above described do not show a disturbance of the appellees' property, except that taken. We cannot agree with this contention. Certainly, if weeds or insects come from around the base of the towers, upon the land, there has been a disturbance; if there is interference with checking corn rows, or if insects and weeds are disseminated, of course the whole field is affected. If inconvenience results in requiring more time to perform the work, a right of the landowner has been invaded. Most of the circumstances described, undoubtedly do have an effect upon the free use of the remainder of the

farm for the best purpose for which it is adapted, which, in this instance, is farming.

The opinion of the real estate experts was that each acre outside of that occupied by the structure and right of way was in the same physical condition as before the structure was placed in the ground. But the appellees are complaining of the inconvenience to the use of the whole farm,—more inconvenience close to the structure and less farther away from the structure,—but affecting the whole farm, more or less, from being used as it had been in the past.

Most of these farms were small, from one hundred acres down. There was no attempt, apparently, to localize the damages by either party, and it was equally impossible for the witnesses for the petitioner or defendants to give exact figures as to damages. It was a matter of opinion, and in a case of this kind, this has been recognized as one of the methods of estimating damages. Under the evidence, we do not believe it can be said there was no damage to land not taken, and no complaint is made as to the value of the land actually taken. Since appellant concedes that the values fixed by the jury for the land taken are not excessive, damage for the perpetual inconvenience described, which does not exceed seven or eight per cent of the value, cannot be said to be excessive. At any rate, it was a question for the jury, and it is a settled rule in this court that damages awarded by a jury in a condemnation proceeding will not be disturbed where the evidence is conflicting and the jury viewed the premises, and the amount fixed is within the range of the evidence. *County of Williamson* v. *Brock,* 367 Ill. 159.

Appellant alleges error in giving defendants' third instruction because it fails to tell the jury that the burden of proof was upon the cross-petitioners to establish damages to land not taken. Standing by itself this instruction would

be objectionable, but the second instruction given on behalf of the petitioner specifically tells the jury that the burden of establishing the damages to the land not taken is not on the petitioner, but is upon the defendants to establish such damages by the greater weight of evidence, and this is emphasized in the fifth given instruction of the petitioner. The fourth instruction of the petitioner told the jury the defendants must establish a direct physical disturbance of a right the owners enjoyed, by the preponderance of the evidence, and this supplied a thing missing in that regard in the defendants' third instruction. The instructions, as a series, correctly stated the law.

We think there was no error in refusing to give petitioner's first refused instruction. In the first place, this instruction was only as to the form of the verdict, and secondly, the part which referred to damages to property not taken was adequately covered by other instructions. There was no error in the giving or refusing of instructions.

The most serious ground urged for reversal grows out of the testimony given as to damages for land not taken, and the claim that separate estimates were not made of damages to the part within the sixty-six foot strip and that outside of it. In *Department of Public Works* v. *Hubbard, supra,* we held that evidence of the killing of stock, inconvenience in herding stock, and cost of additional help, were proper elements of damage to land not taken. In *Illinois Power and Light Corp.* v. *Barnett,* 338 Ill. 499, inconvenience in farming, obstruction or interference on the farm land and shrinkage in the acreage to be farmed, were held elements of damage to the land not taken. In *Illinois Power Co.* v. *Wieland,* 324 Ill. 411, additional labor and trimming of trees, cutting of weeds, were held to be proper elements of damage. The parts of the testimony pointed out by appellant's counsel as being objectionable, seem to come clearly within the cases last cited, and examination of all

the testimony of these particular witnesses established that proper elements were shown upon which to base an opinion as to damages to land not taken.

Appellant takes the position that evidence offered shows damage only to the strip used for the easement and not to lands outside thereof. This argument is difficult to follow. If a checkwire were stretched across a field for corn planting, and two or three hours time are lost in disconnecting the wire while planting in line with one of the towers, the actual fact is that the inconvenience is to the land not taken instead of within the strip, because the tower itself will prevent planting in that particular space. It cannot well be contended that the spreading of weeds and insects from the uncultivated portion under the towers would be confined entirely to the sixty-six foot strip. Crops are lost or diminished by the different methods of cultivation occasioned by the structures that undoubtedly are not confined to the strip reserved for an easement.

"The physical disturbance of a right which a landowner enjoys in connection with his property," as defined by this court, does not mean that it is confined entirely to the location of a physical structure, but if a "right to enjoy" it is disturbed by physical means consisting of structures or actual taking, or by originating results directly affecting the land not taken, proof of such disturbance and the resulting damages may be shown by the landowners. This court has not restricted the proof of damages to lands within the easement. A simple illustration will serve. If, upon a given forty acres, a structure similar to those involved in this case was placed upon the center of every acre instead of merely along the right of way line, obviously the cultivation of the land outside the structures would be greatly hampered and inconvenienced, although physically the land not taken would not be touched by any structure.

Appellant claims error was committed in not separating proof of damages to the land outside from that inside the

right of way, and not occupied by the structures. No specific objection was made at the time the witnesses testified, and the petitioner had previously offered testimony as to the damages to land within the right of way, not taken by the structures.

It has been settled by a long line of cases that a party objecting to evidence must point out the objections specifically so as to afford the adverse party an opportunity to correct it. (*Logan* v. *Mutual Life Ins. Co.* 293 Ill. 510.) Appellant concedes this specific objection now urged was not made, but says it was not necessary. It relies mainly upon *Illinois Power and Light Corp.* v. *Barnett, supra.*

Of the witnesses for appellant, three fixed the damages to the sixty-six foot strip at twenty-five per cent, one at thirty-three and one-third percent, and one at thirty-five to forty per cent of the value, and, as pointed out in the statement of facts on appellant's valuation, this damage would run from $15 to $40 per acre on the land not taken, dependent upon valuation given by appellant's witnesses.

The damage to the land within the right of way not occupied by structures, was fixed by the jury at fifty per cent of the value of the land, and runs from $40 to $55 per acre. The value of the land actually taken by the structures is fixed at $80 to $110 per acre. Appellant says it does not complain of anything except the amount fixed as damages for the land not taken, outside of the right of way, and, therefore, as to the amount of the verdict for lands taken or damaged within the easement, does not find fault with the values fixed by the jury, which must be based upon appellees' evidence.

In the *Barnett case, supra,* where the landowners' witnesses testified to the depreciation of all land not taken by the towers, no element of damage was given by such witnesses as to land outside of the sixty-six foot strip. We think the language used on page 506 of that decision, as applying to all cases of the exercise of eminent domain,

may be distinguished when it says: "These elements of damages should have been separated, and the court was in error in permitting appellees to offer evidence connecting them. This rule was announced in the cases above cited." In the *Barnett case* there was no witness for petitioner as to damage to land outside the easement, and in the present case, appellant, in rebuttal, placed four witnesses on the stand who testified there would be no damage, in their opinion, to the land outside of the easement. Neither this element, nor proper evidence on the part of the landowners as to elements of damage, were in the record in the *Barnett case,* and we feel that the rule announced in that case should be confined to cases showing substantially the same facts as there.

The trial of this case involved eighteen tracts of varying sizes and locations and commenced on December 28, 1937, and ended on January 5, 1938. The record and the bill of exceptions contain over seventeen hundred pages and, considering the time and the issues involved, is remarkably free from error.

The judgment of the county court of St. Clair county is affirmed.

*Judgment affirmed.*