(No. 24788.—

THE ILLINOIS IOWA POWER COMPANY, Appellant, *vs.* GEORGE W. GUEST *et al.* Appellees.

*Opinion filed December 15, 1938.*

PRESTON K. JOHNSON, for appellant.

TURNER, HOLDER & ACKERMANN, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The Illinois Iowa Power Company filed a petition in the county court of St. Clair county, under the Eminent Domain act, to acquire a right of way sixty-six feet in width across a certain farm in that county for an electrical transmission line, and to assess the compensation to the owners whose land the transmission line would cross. Certain land owners filed an answer averring that the petitioner was without authority to condemn the proposed right of way and also a cross-petition alleging special damage. Evidence was heard upon the foregoing pleadings. The jury rendered a verdict finding the damages for land taken for sites for structures, for the strip of land over which the line was to be placed and for damage to the lands outside of the limits of the strip of land mentioned. Judgment was entered on the verdict. From the judgment this appeal was prosecuted.

The Illinois Iowa Power Company filed two petitions with the Illinois Commerce Commission for the purpose of obtaining a certificate of convenience and necessity to construct, operate and maintain an electric transmission line

in St.Clair county. The history of the two applications is contained in the opinion in *Illinois Iowa Power Co.* v. *Rhein,* 369 Ill. 584, filed at the October Term, 1938, and it need not be repeated here. Some of the legal questions presented in that case are also raised here. A somewhat different factual situation with respect to the elements of value of the land lying outside the limits of the strip taken under the transmission line and damage thereto is presented here.

The land over which it is proposed to construct the transmission line is timbered and rough, with a slough upon it and a creek running through it. The strip proposed to be taken is 66 feet wide and extends for a distance of ·1452 feet, containing an area of 2.2 acres. The evidence discloses that offers for the land had been made and rejected and the power company was unable to agree with the owners of the land upon the amount which should be paid to them. Five witnesses for the petitioners expressed opinions relative to the value of the land involved, ranging from $25 to $35 an acre. One witness placed the value at about $35 an acre; another fixed it at $32; a third estimated the value at from $30 to $35; the valuation by a fourth was from $25 to $35. This witness testified that with the line over the 66-foot strip there would be some change in value of the strip—probably twenty to twenty-five per cent depreciation. Another witness thought the fair cash market value was $30 an acre and that the value of the land actually occupied by the structure was $30 an acre. The witness testified that he believed the value of the land in the 66-foot strip would be depreciated about twenty-five per cent.

On behalf of the owners of the land, Guest, one of the owners who was a coal operator, and a second witness familiar with coal mining, testified that there were coal deposits on the land. The owner who testified stated that he

had made no test but there was coal at the corners; that it lies at a depth of from twenty to thirty feet; that there are limestone deposits on the land over most of the tract which had been tested and have value. The other witness, who had been engaged in mining construction and the operation of mines in St. Clair county in the vicinity of the land in question, testified there was coal on the land except at the due west portion; that there was a shaft on other property about 650 feet from the northwest corner of the land in question, but it was not in operation at the time of the hearing; that there were deposits of limestone on the land, which in that vicinity are from seven to twelve feet in thickness, and underneath there is coal.

Guest testified that strip mining would be the best method of removing the coal, but that the power line would interfere with the removal of about sixty per cent of the coal; that the north half of the tract could not be mined because access thereto was obstructed on account of the poles and wires and only one-half of the tract could be mined; that where wires are twenty-three feet above ground the boom of the shovel used in strip mining would not pass under the wires. He further testified that the owners had many opportunities of disposing of the land. The second witness above mentioned was of the opinion that the land with the coal rights was worth $300 an acre, and he expressed the same opinion as the last mentioned witness that the boom of a shovel used in strip mining would not pass under the wires of the transmission line. A third witness estimated the fair cash market value of the land in question at $250 an acre for the eighty-acre tract, and that the coal would be worth $200 an acre. He testified that there was a strip mine on land adjoining the property here involved; that the construction of the transmission line would depreciate the value of the land for mining purposes, and that approximately five acres of land would be lost to the

owners. Other witnesses testified to the sale of land near the land here in question for $175 per acre for strip mine purposes. In rebuttal there was testimony offered that the transmission line would not necessarily prevent strip mining on the property, and that the part of the land away from the transmission line and the 66-foot strip would not be depreciated.

The jury viewed the premises. It allowed $836.50 for damages to the land of the owners outside of the right of way.

It is contended that the amount awarded was unreasonable; that it is not supported by the evidence, but is contrary thereto and that no such award was justified for damages to lands not taken. To recover damages to lands located outside of an easement it is essential to prove a physical disturbance of a right enjoyed in connection with the land causing special damage, based upon proper elements, in excess of that sustained by the public generally. (*Department of Public Works* v. *Hubbard*, 363 Ill. 99; *Illinois Power and Light Corp.* v. *Barnett*, 338 id. 499; *Illinois Power and Light Corp.* v. *Cooper*, 322 id. 11; *Illinois Power and Light Corp.* v. *Parks*, id. 313; *Illinois Power and Light Corp.* v. *Talbott*, 321 Ill. 538.) To justify compensation, however, the damage must be direct and proximate and not such as is merely possible or may be conceived by the imagination. (*Super-Power Co.* v. *Sommers*, 352 Ill. 610; *Illinois Power and Light Corp.* v. *Barnett, supra; Illinois Power and Light Corp.* v. *Talbott, supra; Department of Public Works* v. *Hubbard, supra.*) There was testimony by witnesses, familiar with coal deposits and mining operations in the county and vicinity of the land in question, that the land was underlaid with coal and limestone. The testimony was of a positive character. There was coal near the land, and the presence of limestone, which also had a value, indicated deposits of coal. This testimony

was not objected to at the time it was offered and no evidence to the contrary was presented. The appellant is not in a position to now complain. (*East Peoria Sanitary District* v. *Toledo, Peoria and Western Railroad,* 353 Ill. 296.) The ultimate question for the determination of the jury was whether there was damage to the property and the amount, if any, to be assessed. While it is claimed that the testimony concerning the presence of coal was speculative, that was an evidentiary fact upon which there was testimony submitted without objection. On the record the question was one proper for the consideration of the jury. At the close of the evidence the petitioner moved to exclude the defendants' evidence as to the claim for damages to land outside of the right of way because the testimony was speculative and not based on proper elements of damage. What we have just stated is applicable to the motion made at the close of the evidence.

It is contended that the court erred in giving an instruction with reference to the burden of proof being upon the cross-petitioners to establish damages to the land not taken. The instruction is the same as one considered by this court in *Illinois Iowa Power Co.* v. *Rhein, supra.* An instruction for the petitioner in this case, as in the case just mentioned, specifically informed the jury that the burden of establishing the damages to the land not taken was not on the petitioner and that the defendants were required to establish such damages by the greater weight of the evidence. The instructions, as a series, correctly stated the law. A refused instruction as to the form of verdict is identical with one considered in *Illinois Iowa Power Co.* v. *Rhein, supra,* and what was said in that case is applicable to the refused instruction in this case.

The jury's view of the premises is in the nature of evidence and may be considered by it in making up its verdict. (*South Park Comrs.* v. *Livingston,* 344 Ill. 368; *Sanitary*

*District* v. *Johnson*, 343 id. 11.) Damages awarded by a jury in a condemnation proceeding will not be disturbed where the evidence is conflicting, especially where the jury viewed the premises and the amount of the compensation fixed is within the range of the evidence. *County of Williamson* v. *Brock*, 367 Ill. 159; *City of Mt. Olive* v. *Braje*, 366 id. 132; *Forest Preserve District* v. *Dearlove*, 337 id. 555.

The judgment of the county court of St. Clair county is affirmed.

*Judgment affirmed.*