(No. 31783.

CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Appellant,
*vs.* CLAUDE E. LEE, JR., *et al.,* Appellees.

*Opinion filed March 22, 1951—Rehearing denied May 21, 1951.*

STEVENS & HERNDON, of Springfield, STONE & FOWLER, of Marion, and FEIRICH & FEIRICH, of Carbondale, for appellant.

FORD L. RENDELMAN, of Anna, for appellees.

Mr. CHIEF JUSTICE SIMPSON delivered the opinion of the court:

This is a direct appeal from a judgment of the circuit court of Union County entered on the verdict of a jury in an eminent domain proceeding.

June 19, 1950, the appellant, Central Illinois Public Service Company filed its petition for the condemnation of sites for two wood-pole H-type structures and an easement 110 feet wide and 803 feet long across a tract of land owned by Claude E. Lee, Jr., and Mary Ruth Lee, appellees, for the construction, operation and maintenance of an electric transmission line from its generating station

near Grand Tower to its substation to be erected near the city of Anna. Appellees filed a cross petition claiming damages to the remainder of the tract across which appellant was seeking to erect its power line. After opening statements by counsel for both parties, the jury was permitted to view the premises, and after hearing the evidence of witnesses, returned a verdict fixing damages for land taken as the sites of the wood-pole H-type structures at eighty-four cents; damage for the use of the 110-foot strip was fixed at the sum of $202.78; and as damage to the remainder of the tract, outside of the easement strip, the sum of $2996.38 was allowed. Judgment was, thereupon, entered for the total sum of $3200.

The rectangular tract of land across which the easement extends consists of 22.4 acres, situated about 2½ miles north of the city of Anna, on the east side of United States Highway Route 51, which it borders for approximately 775 feet. The improvements consist of a new dwelling house containing a total of seven rooms, including the garage and utility room, with all modern facilities, and a large barn, all of which were completed in 1948. The tract outside of the area around the house and barn was used for pasture. The center of the 100-foot easement strip runs approximately parallel to the west boundary line of the farm, along Highway Route 51, traversing the farm a distance of 803 feet. The area of the easement strip is 2.0278 acres. Approximately ⅓ of the farm lies west of the easement strip, between it and Highway Route 51, and all buildings and improvements are situated on this portion of the tract, near its southwest corner. No buildings are situated on the easement strip or on the remaining portion of the tract east of the strip.

The transmitting agencies to be constructed along the easement strip are three electric transmitting cables suspended in a horizontal plane from two wood-pole H-type structures placed 532 feet apart. The structure at the

north end of the easement strip is 69 feet from the north boundary line of the tract, and consists of two 70-foot cedar poles, situated 14½ feet apart at right angles to the center line of the easement strip. Attached to each pole, at a point 12 feet below its tip, is a down-guy wire leading to a guy-log buried in the ground approximately 34 feet from each pole. The other wood-pole H-type structure is located 532 feet southeast from the north structure, and 202 feet from the south boundary line of the tract. It consists of two 80-foot red cedar poles erected in the same manner as the north structure, but without guy wires.

At a point 5 feet 8 inches below the tops of the poles of the respective structures are 30-foot crossarms upon which are three insulators, from which are suspended the transmission cables. In the event that the cables should break for any reason, they will immediately become de-energized by automatic circuit breakers. The minimum distance of any wire above the ground will be 41 feet. The strip will be entered through temporary openings in the fences at each end, which are to be replaced by appellant. No fences will be placed along the entire length of either side of the easement strip, and all uses of the strip other than those required for the construction, operation, and maintenance of the line, will remain in the appellees. The only land actually taken amounts to .0042 of an acre which is occupied by the four poles and the two guy wires. The nearest the easement strip comes to any of the improvements on the premises is 32 feet distant from the barn and approximately 70 feet distant from the dwelling house. The distance of the nearest conductor to the barn is 67 feet, and to the dwelling house, 115 feet. The nearest pole is 75 feet from the barn and 200 feet from the dwelling house.

After viewing the premises and listening to the testimony of witnesses, the jury found the value of the .0042 acres of land actually taken to be eighty-four cents; the damage to the 2.0278 acres, not taken but included in the

easement, to be $202.78, a rate of $100 per acre; and the damage to the 20.3122 acres, not taken and outside the easement strip, to be $2996.38, a rate of $147.51 per acre. Appellant makes no complaint as to the amounts allowed for the sites occupied by the two H-type structures or for damages to the 110-foot easement strip, but it does insist that error was committed in allowing $2996.38 as damages for land not taken and which was situated outside the easement strip. Appellant's assignment of errors may be grouped as follows: (1) That the verdict was excessive and not supported by the evidence, (2) that improper evidence was admitted on behalf of the appellees, and (3) that the court gave improper instructions on behalf of the appellees and refused to give proper instructions offered by appellant.

There were three elements of damage to be considered by the jury. First, the fair cash market value of the fee to the land on which the two H-type pole structures were to be situated. Second, the depreciation of the fair cash market value of the 110-foot easement strip. Third, the depreciation, if any, of the fair cash market value of the remainder of the tract outside of the 110-foot strip. This latter element was claimed in the cross petition of appellees and the burden of proof was upon them to establish such depreciation. There is no question but that appellees were entitled to compensation for the land occupied by the two sets of poles and the depreciation in the fair cash market value of the 110-foot easement strip, neither of which is questioned by appellant. The controversy, therefore, in this case, is centered around the $2996.38 depreciation fixed by the jury for the 20.3122 acres remaining in the tract, outside the land taken and the 110-foot easement strip.

The burden of proof was on appellees to show damage to that part of the tract not described in the original petition of appellees, and not included within the 110-foot easement strip. The ultimate fact which appellees were

required to prove was a depreciation of the fair cash market value of the tract because of conditions which would furnish the basis for a common-law action. They are required to prove the same facts which they would have been required to prove in an action at common law. Depreciation in the fair cash market value alone will not sustain a claim for damages. (*Illinois Power and Light Corp.* v. *Talbott,* 321 Ill. 538.) Damage to be compensated for must be direct and proximate and not such as is merely possible or may be conceived by the imagination. *Super-Power Co.* v. *Sommers,* 352 Ill. 610.

To be entitled to compensation for damages to land not taken, appellees were required to prove by competent evidence that there has been some direct physical disturbance of their right, either public or private, which they enjoy in connection with their property, causing them special damages in excess of those sustained by the public generally. (*Rockford Electric Co.* v. *Browman,* 339 Ill. 212.) We have held that evidence of the killing of stock, inconvenience in herding stock, and cost of additional help were proper elements of damage to land not taken. (*Department of Public Works and Buildings* v. *Hubbard,* 363 Ill. 99.) Inconvenience in farming, obstruction or interference on the farm land, and shrinkage in the acreage to be farmed are also elements of damage to land not taken. (*Illinois Power and Light Corp.* v. *Barnett,* 338 Ill. 499.)

Additional labor and trimming of trees and cutting of weeds are likewise proper elements of such damage. *Illinois Iowa Power Co.* v. *Rhein,* 369 Ill. 584; *Illinois Power Co.* v. *Wieland,* 324 Ill. 411.

In order to sustain the burden of proof, appellees offered the testimony of two witnesses on the question of depreciation in the fair cash market value of the remainder of the land in the tract outside of the easement strip. L. Oard Sitter testified that the fair cash market value of the .0042 of an acre actually taken as a site for the two

H-type pole structures was eighty-four cents, computed at the rate of $200 per acre; that the fair cash market value of the $.0278 acres in the proposed easement strip before the construction of the proposed electric transmission line was $200 per acre and after the construction of said line would be $100 per acre; that the depreciation in value of the whole farm after the proposed line would be constructed, based on inconvenience and obstruction, shrinkage in the area of the farm as a whole, growing of weeds around the poles and the possible disseminating of insects and weed seeds over the remainder of the farm, rebuilding of fences outside of the easement strip, and the replacement of trees on land outside of the easement strip to take the place of trees cut down on the easement strip, would amount to the sum of $4500. Damage to land outside the easement strip was computed at the sum of $4500 less eighty-four cents, the value of the land actually taken, and less $202.78, the depreciation in value of the land within the eastment strip but not actually taken.

Harry H. Wood, a witness on behalf of the appellees, testified that the fair, cash market value of the whole tract was $20,000; that the fair, cash market value of the land within the proposed easement strip was $300 an acre, which would be depreciated 50 per cent because of the existence of the easement across that strip; that the value of the land actually taken was $300 per acre; and that the whole tract would be depreciated 25 per cent of its present fair, cash market value because of inconvenience, interference, and obstruction, shrinkage of the farm, and the hazard of weeds growing about the poles and disseminating weed seeds, bugs, and insects on the remainder of the tract. The depreciation to be allowed for the remainder of the tract outside the easement strip was arrived at by deducting $300 for the damage to the land included in the easement, and also deducting the value of the land actually taken for the pole sites.

In rebuttal three witnesses testified on behalf of appellant that there would be no damage to the 20.3122 acres remaining in the tract outside the easement strip.

Appellant contends that the compensation allowed as damages for the land not taken was excessive. In that connection it is urged that the amount of damages allowed for depreciation in value of the easement strip, which is burdened with the perpetual right of appellant of ingress and egress to maintain the lines and to have the strip perpetually kept clear of buildings, or other interference on the part of appellees, is less than the amount per acre fixed as depreciation in the value of the remainder of the farm which lies outside of the easement strip. Compensation for the easement strip was fixed at $100 per acre, which was 50 per cent of the actual fair, cash market value of the 2.0278 acres comprising the strip. It is claimed that the depreciated value of the remaining land amounts to $147.51 per acre and is, therefore, excessive because such remaining land was not burdened with the easement.

The measure of compensation for land actually taken and occupied by the poles is its fair, cash market value. The 110-foot strip which comprises the right of way, except the part to be occupied by the poles, is land not taken. The measure of damage to the lands within the strip is the depreciation in the fair market value of the strip, exclusive of the sites for the H-type pole structures, for agricultural purposes caused by its subjection to appellant's superior right to use it for the purposes stated in the original petition. (*Illinois Power and Light Corp.* v. *Peterson,* 322 Ill. 342.) The measure of damage to the remainder of the property not taken is the depreciation in the fair, market value of the property as a whole caused by a direct physical disturbance of some right incident to its ownership. (*Kane* v. *City of Chicago,* 392 Ill. 172.) It is not required to be estimated by the acre.

In the instant case, one of the witnesses for appellees testified that the property as a whole, before the public improvement, was worth $18,000 and after such improvement it was worth only $13,500. This amounts to a depreciation of $4500. Another witness placed the value of the property as a whole at $20,000 and fixed its depreciation, after the public improvements had been completed, at $5000. The whole tract of land consisted of 22.4 acres, upon which was situated a modern, new dwelling and barn. The use of the property as a residence and pasture for cattle is consistent with its highest and best use. The right-of-way easement traverses the premises at a point back of the house and barn, leaving approximately ⅓ of the tract on one side of the easement and ⅔ on the other. This strip must be kept open and free of obstruction on account of the easement. In area the strip comprises approximately one tenth of the total tract.

Contrary to appellant's contention, the verdict of the jury is based upon proper testimony concerning inconvenience, obstruction, interference with the farm use of the land, and shrinkage in the total area of the tract, brought about by the public improvement to be placed thereon by appellant. The jury viewed the premises and, from the situation developed by the testimony, we do not consider the verdict excessive. The jury found damages on account of such depreciation in value to be $2996.38. This was well within the range of the testimony. Damages awarded by a jury in a condemnation proceeding will not be disturbed where the evidence is conflicting, especially where the jury viewed the premises and the amount fixed as damages is within the range of the testimony. *Illinois Iowa Power Co.* v. *Guest,* 370 Ill. 160.

The appellant complains of an instruction given at the instance of appellees, concerning the credibility of witnesses. This instruction directed the jury that if it found

that any witness, or witnesses, testifying on behalf of either side, had testified falsely to any material fact to the issue in the case, it had the right to disregard all the other testimony of such witness, or witnesses, except insofar as such evidence might be corroborated by other credible evidence. The instruction is not free from criticism, but it was a general one directed at all of the witnesses on both sides of the case. In the cases relied upon by appellant, the instruction criticized concerned the credibility of witnesses who testified on the particular question of value.

Other instructions, in the instant case, directed the jury to give the testimony of each witness such weight only as the jury might believe it entitled to from the evidence and from the jury's view of the premises; that the jury should carefully scrutinize the testimony of all witnesses and consider all the circumstances under which any witness testified; his apparent knowledge and experience concerning the subject of his testimony; his demeanor and manner on the stand; his relations, if any, to the parties of the suit and the manner in which he might be affected by the verdict, if at all; his apparent candor and fairness, and, from all the surrounding circumstances appearing at the trial, determine which witnesses are the more worthy of credit. In the light of the other instructions, we do not believe the jury could have been misled by the giving of this one instruction on the credibility of the witnesses.

Criticism is likewise made of appellees' instruction concerning the measure of damages to lands not taken, which lie outside of the proposed easement. The instruction contained a proper statement of the law on that question. The objection is that it failed to inform the jury that knowledge gained by the jurors from their view of the premises was part of the evidence to be considered on the question of damages. Two other instructions advised the jurors that they were to view the premises and that their view of the same was part of the evidence in the case and was to be

taken into consideration with the other evidence in arriving at their verdict. Under these circumstances there was no error in the giving of this instruction.

Appellant tendered 30 instructions, of which number 25 were given and five refused. Eight instructions were given on behalf of appellees. There was a total of 33 instructions given for the guidance of the jury. We find that when the instructions are considered as a series they adequately instructed the jury as to the issues involved.

The verdict is supported by the evidence and, finding no prejudicial error in the record, the judgment of the circuit court of Union County is affirmed.

*Judgment affirmed.*