## SPRINGFIELD & MEMPHIS RAILWAY v. RHEA ET AL.

1. RAILROADS: *Right of way: Assessment of damages.*

Where the assessment of damages for right of way precedes the building of a road, the presumption is that it will be built with skill and proper precautions. But if the road has been completed through the land at the date of the trial, the jury may consider the state of facts then existing, and from the light of the actual construction determine what the damage has been, embracing all past, present and future damage which the location of the road may reasonably produce.

2. SAME: *Same: Elements of damages.*

The manner in which the railroad passing through land cuts it up, the amount and location of the land taken, the inconvenience to the owner in passing from one part of his field through which it runs to another, the absence of proper crossings, and the overflowing of the land caused by the road, are all proper elements of damages for taking the right of way.

3. SAME: *Same: Evidence.*

Evidence of damage for taking land for right of way should be directed first to the actual value of the land taken by the railroad, then to the damages resulting to the remainder.

4. SAME: *Same: Tax assessment.*

The tax assessment of land for the year succeeding the building of the road is not admissible as evidence in the assessment of damages for the right of way.

Springfield & Memphis Railway v. Rhea et al.

5. SAME: *Same: Trial: Opening and conclusion of argument.*

In proceedings by a railroad company to condemn land for right of way, the owner of the land is entitled to the opening and conclusion of the argument. The amount of the damage is the object of inquiry, and the burden of proof is upon the land owner.

6. SAME: *Same: Excessive damages.*

The Supreme Court will not set aside a verdict as excessive where it is not unsupported by proof, is not in disregard of the charge of the court, and there is no reason to suspect the influence of passion or prejudice in the jury.

APPEAL from *Independence* Circuit Court.
Hon. R. H. POWELL, Circuit Judge.

*N. & J. Erb* for appellant.

1. In condemnation proceedings only those damages which are direct and peculiar to the property, resulting naturally and necessarily from its use when the road is skillfully and properly constructed, can be recovered. Damages from faulty construction or defective drainage must be recovered in another suit. *Pierce on Railroads*, p. *179; 34 Iowa, 458; 14 Am. & E. R. R. Cases, 198; Mills on Em. Dom., sec. 220.*

2. The difference between the cash market value before the location of the road, and such value after its construction, is the measure of damage. The complex questions of defendant, setting forth the *elements* of damage, were improper. *51 Penn. St., 87, 90; 2 Iowa, 288, 310; 90 Ill., 514.*

3. The verdict was excessive.

4. The owner is entitled to, first, the actual value of the land taken; and second, damages necessarily resulting to the remainder. The instructions of the court lay down a different rule.

5. The assessor's evidence clearly admissible. *8 Nev.*, *165; 78 Pa., 464.*

6. It was error to exclude evidence of recent sales of similar lands in the vicinity. (*13 Metc., 316; 3 Allen, 142; 4 Ib., 168; 103 Mass., 165; 105 Ib., 535; 19 N. H., 372; 23 Ib., 227; 34 Iowa, 458.*) If the court rejects evidence of sales, which clearly ought to have been admitted, a new trial will be granted. *122 Mass., 305; 4 Allen, 169.*

7. Petitioner was entitled to open and close. It seeks the exercise of a constitutional and statutory privilege, and must show such right. It is the actor, the moving party. If no evidence were admitted on either side its petition would be dismissed.

*Butler & Neill* for appellee.

1. The offer to prove a listing of the lands for taxation rightfully denied. The law does not require one to affix a value to lands for the purpose of assessment. *42 Ark., 572, 527.*

2. The question asked Rhea related only to such damages as are allowable. *Pierce on Railroads, pp. 174–5; 41 Ark., 431; 39 Ib., 167.*

3. The opinions of witnesses of the reasonable and probable consequence of the construction of the embankment and ditches admissible. *Mills on Em. Dom., sec. 216; 41 Ark., 431; Pierce on R., 228; 39 Ark., 174.*

4. The road was completed when the cause was tried, and all damages then existing were proper matter of adjustment. *Pierce on R., 229, and note 8; Mills on Em. Dom., sec. 218.*

5. No evidence of sale of *similar* lands and *similarly* situated, so as to come within the rule, was offered. *Mills Em. Dom., sec. 170.*

6. The law means the *market* value, and not a price obtained at forced sale. *Mills Em. Dom., sec. 168.*

7. Damages to owner's remaining land are recoverable, though not specially alleged. *Pierce on R., p. 211, and note 2.*

8. Appellee, claimant for damages, had the opening and closing. *Pierce on R., p. 187; Mills Em. Dom., sec. 92.*

9. Sales of *similar* land are not the *best* evidence. Generally they are not admissible. *Mills Em. Dom., sec. 170.*

10. Compensation for insufficient drainage should be given. (*Ib., sec. 189.*) The railroad was completed at the time of verdict. *Ib., sec. 218; Pierce on R., p. 229.*

11. Verdicts will only be set aside when unsupported by proof, or when *so excessive* as to indicate passion or prejudice. *42 Ark., 529.*

SMITH, J. The railroad company filed its petition to condemn a right of way through the defendant's farm. The answer claimed $1,500 damages, and the jury awarded $1,000. The farm lay in the valley of Spring River, and contained 145 acres, of which eighty or eighty-five were under cultivation. The right of way, 100 feet wide, traversed the tract diagonally for a distance of 3,200 feet, cutting it into two parcels of inconvenient shape for purposes of tillage. The railroad embankment, from three to five feet high, increased the liability to overflow of the land lying between the railroad and the river by contracting the flow of the water and preventing it from spreading out over the bottom as it did before the road was built, and also exposed it to the danger of washing. The estimates of witnesses as to the value of the farm before and after the appropriation, were widely divergent, ranging from ten to fifty dollars per acre for the improved land, and from three to ten dollars for the unimproved. According to the testimony adduced for the company, Rhea's damages were not less than $250, and not more than $400 ;

while the testimony on the other side placed the damages all the way from $1,000 to $1,500. The area actually taken was between seven and nine acres, and this was nearly all fertile land in a state of cultivation. The railroad also interfered with the owner's private ways, rendering portions of the farm inaccessible except by taking a circuit to get to a crossing, and cut off his live stock from approaching the river, which was his dependence for stock water in summer.

At the institution of the condemnation proceeding the road had not been built through the farm, but it was finished before the trial. Evidence was received tending to show permanent injury to the land by the obstruction of the natural flow of surface water, and of back water from the river, and that the system of drainage that was substituted was insufficient. The company's contention was, that no damages were recoverable in this action on account of faulty construction or imperfect drainage, but that such damages, if there were any, must form the subject of an independent suit.

1. RIGHT OF WAY. Assessment of damages. Where the assessment of damages precedes the building of the road, the presumption is that it will be built with skill and proper precautions. But if the road has been completed through the land at the date of trial, the jury may consider the state of facts then existing, and, with the light afforded by the actual construction, determine what the damage has been. The law does not favor the splitting up of causes of action, or the multiplication of suits for the same injury. The assessment embraces all past, present and future damages which the location of the road may reasonably produce. *Pierce on Railroads, 229; Mills on Eminent Domain, secs. 216, 218.*

After numerous details, showing the quality and situation of the land, and the manner in which it was

affected by the railroad, the defendant was asked this question:

"How much damage have you sustained by the location 2. Elements of damages. of the railroad through your land, considering the manner in which it cuts it up, the number of acres taken right out of the center of it, the inconvenience you will experience in passing from one part of your field to another, and the overflowing of your lands, and the absence of proper crossings, and everything else you have stated, estimating the difference in the value of the land before the building of the road and value after it was built?"

Similar questions were propounded to other witnesses who had shown a familiarity with Rhea's farm and its surrounding before and since the road was built.

Testimony in such cases should be directed, first, to the 3. SAME: Evidence. actual value of the land taken by the railroad for its purposes, and then to the damage resulting to the remainder of the tract. The answer of a witness to such a question is necessarily a matter of opinion. But values rest largely in opinion. All of the matters mentioned in the question are proper elements of damage. *St. L., Ark. & Tex. R. v. Anderson, 39 Ark., 168 ; Pierce on Railroads, 174–5 ; L. R., Miss. R. & T. Ry. v. Allen, 41 Ark., 431.*

There was no error in excluding from the jury the 4. Assessment for taxes not admissible. assessment of Rhea's land for taxation in 1883, the year after the railroad was built. *Tex. & St. L. Ry. v. Eddy, 42 Ark., 527.*

It is further complained that the court below rejected Nor sales of other lands. evidence of actual sales of similar lands in the vicinity. But this assignment is not borne out by the bill of exceptions. The rejected evidence related either to sales not recent in point of time, or not adjacent in place, or the lands were not similarly situated, or the witness was speaking from rumor. Great latitude is allowed the Circuit Court in admitting or rejecting such evidence.

An exception was also taken to all of the instructions, in mass, that were given at the instance of the defendant. We are not in the habit of examining very critically so general an exception which directs the attention of the Circuit Court to no specific defect. But the instructions appear to have been carefully framed, and to be unobjectionable.

5. Opening and conclusion.

To the defendant were justly accorded the opening and conclusion of the argument. The land owner is, in such cases, the real actor, no matter which party initiates the proceedings. No issue can be raised as to the right of the railroad corporation to condemnation, or as to his right to compensation. The law confers these rights, and the filing of the petition by the railroad company is an admission that he is entitled to some damages. The extent of the damage is the object of the inquiry. And here the burden of proof is upon him. *Mansfield's Dig.*, *sec. 5131, clause 6 ; Pierce on Railroads, 187 ; Mills on Eminent Domain, sec. 92.*

6. Excessive damages.

Lastly, it is claimed that the damages were excessive. As we have already said, the testimony on this point is conflicting. The verdict is not unsupported by proof; it was not in disregard of the charge of the court; and there is no reason to suspect the influence of passion or prejudice. On the application of the petitioning company, the venue was changed from the county in which the land lay to a county through which the railroad did not pass, expressly to avoid any possible bias for or against the parties. The company is required to pay a pretty round sum for the privilege of crossing the land ; yet to say it is too much is to usurp the function of the jury. *Tex. & St. L. Ry. Co. v. Eddy, 42 Ark., 527.*

Affirmed.