MISSOURI & NORTH ARKANSAS RAILROAD COMPANY *v.* BRATTON.

Opinion delivered December 13, 1909.

1. APPEAL—NECESSITY OF OBJECTION TO EVIDENCE.—Testimony introduced without objection in the trial court cannot be objected to on appeal. (Page 569.)

2. EMINENT DOMAIN—ASSESSMENT OF DAMAGES.—Where a railroad has been completed through plaintiff's land before an action is brought to recover damages for land appropriated for the right of way, plaintiff is entitled to recover the damages to plaintiff's land, if any, caused by closing the natural outlet for water at high water season. (Page 569.)

Appeal from Van Buren Circuit Court; *Brice B. Hudgins,* Judge; affirmed.

*W. B. Smith, J. Merrick Moore* and *H. M. Trieber,* for appellant.

Speculative testimony of probable damage tends to divert the mind of the jury from the real damage. 23 Wend. 434. The elements entering into the estimate of damages for a right of way must not be of a remote or speculative character. 39 Ark. 167; 16 Barb. 196; *Id.* 100; 13 Barb. 169; 53 Barb. 457; 35 N. H. 134; 10 Cush. 385; 12 Cush. 605; 27 Pa. St. 99; 33 *Id.* 57; 34 Ia. 353; 128 N. Y. 465; 6 Wis. 636. It is not competent for a witness to draw a conclusion of fact from the evidence in the case. 185 Mo. 239; 191 Mo. 347; 57 Mich. 512; 208 Ill. 608; 13 N. D. 432; 181 N. Y. 33. Prospective or speculative damages do not constitute an element to be paid the owner of land by a railroad condemning it for a right of way. 41 Ark. 431; 54 Ark. 540; 34 Ia. 458.

*William Gilmore* and *Rose, Hemingway, Cantrell & Loughborough,* for appellee.

Where a railroad is so constructed as to cause land to overflow, the owner may recover for the injury. 45 Ark. 253; 44 Ark. 360; 54 Ark. 140; 62 Ark. 360; 71 Ark. 189; 72 Ark. 127.

BATTLE, J. This was an action brought by the owner of property entered upon and appropriated by the appellant for a right of way, for damages for such appropriation.

The amended complaint, filed August 12, 1907, is as follows:

"The defendant is a corporation organized and doing business in the State of Arkansas. The plaintiff is the owner of the north half of the northwest fourth, section 13 in township 13 north, range 14 west, in Van Buren County, Arkansas. The defendant constructed a railroad over said land, and in so doing located it dangerously near to the buildings and well on the land; appropriated about five and three-fourths acres of the same to their own use as right-of-way; destroyed his private road leading to the land, and forced plaintiff to use a much poorer road and to climb a part of the mountain to reach said road, which climb was not required by his former road; con-

structed a fill from the railroad bed (in the wagon road) across
a low swag where the water formerly passed around in high
water season; and so constructed the grade of the railroad bed
that the water can not find an outlet around his cultivated land
when the Red River is, at high stages, as it formerly did, but
will throw a damaging current over part of his cultivated land,
and will undoubtedly cause the destruction of between five and
fifteen acres thereof. By blocking said outlet for high water,
the whole force of the current of Red River, which crosses
the land, will be directed against the bank of the portion of
elevated land near the river where plaintiff's buildings are lo-
cated, and is likely to undermine said buildings and destroy
more of his land. In making the elevated grade for roadbed
it caused deep curves to be made near the buildings, and so made
the excavations that there is no outlet for the water, and said
excavations retain stagnant water at all seasons, which water
renders the habitation unsanitary and dangerous to health.

"In constructing said railroad the defendant located it so
as to enter the southwest corner of his field, and follow the
highest part of the land, and pass out about the middle of the
north side of the field and so curve about that it leaves him
two irregular, inconvenient shaped fields, requiring short turn-
ing in middle of the former field; and that the defendant located
only one crossing over the railroad, which crossing is near the
middle of the field and requires a roadway over and along more
land to go and return from work, and is an unending annoy-
ance and injury to the tiller of the land.

"Plaintiff states further that the land is almost all river
bottom land, and is very productive, and is also very easily
affected by water currents, and that he had about 40 acres in
cultivation, and that he is damaged as follows: by land taken
in right-of-way, $400; by injury to balance of land by cutting
into irregular shapes and inconvenient fields, $600; by incon-
venience in crossing, $200; by danger of fire to buildings and
other property and annoyance of trains, $150; by damages from
overflow and changing course of river at high water stages,
$500; by damages from taking former roadway and change
of road, $250; injury from stagnant water near buildings, $200;
interest on the money since injury done, $175."

The action came on for trial in the Van Buren Circuit Court, and Ambrose Bratton, the plaintiff, testified in his own behalf that the defendant constructed its railway across his land and appropriated for its right-of-way more than' five acres of land, which was worth one hundred dollars an acre; and built it through a field on the land, consisting of fifty acres, and so divided the field as to leave it in an inconvenient shape to cultivate, and thereby impaired its value in the sum of $650, and made it inconvenient and difficult to cross the railroad from one part of the field to the other, and thereby damaged him in the sum of $150, and constructed its railroad track within one hundred feet of his barn, and a little further from his residence, and, brought them within range of sparks and cinders escaping from passing engines, and endangered stock on his premises, and by such proximity impaired the value of his farm in the sum of two hundred dollars. (For the purpose of explanation we say here. that the land in question is on Little Red River, and that is the river referred to in the testimony of plaintiff.)

Plaintiff further testified, in part, in response to interrogations, as follows:

"Q. Now, state whether or not there is any damage or probable damage the water will have on the land there? A. Just like I stated the other day, the river has a square turn there that comes from the west, due east, and runs squarely against the bank. It is low, and next to the mountain, where the wagon road comes, it runs and makes a sharp turn, and the force of the water for two hundred yards comes square against that bank. At a high time it runs over there before the road was put there. I saw it three feet or more deep where the roadbed is now. There were two big white oaks there that had the ground set with roots that kept the ground from washing. As soon as the roots rot, it will cut that, and keep cutting it on the wagon road, and it will run over the foot of the wagon road where they have built that dump, and cut it out just like a snow ball. That will run it into the ditch next to the railroad where the borrow pits are. The water will go right through there. Q. Is there any part of your land that has been subject to back water? A. Five acres there that gets water at a high time. The water will run on to it as soon as the water

gets high. Some of it will run around. If that dump stands there, it will force all of that water around on my land. Q. How many acres of that is there? A. Five, and maybe six. Q. Now, what do you estimate the probable damage will be for the flowing of that water over your land? A. Five hundred dollars. Q. In case that dump they have built there does withstand this water and turn it, is there any other effect that is apparent that you see by the turning of this water? A. It will keep cutting out that bank there against my barn and knock it out into the river. Q. Do you mean for your estimate to amount to $500 from the effect of the water? A. Of course; on July 31, three years ago, it was three feet deep around there. It was all over the field, and the current run around there. They have filled it in over this way to try to prevent that. If it stands, it will throw it around here, and if it don't stand, it will throw that through the field, and make a river where them borrow pits are. That is the reason I say it would be worth $500. Q. What effect will it have on those five acres there? A. It will cause it to wash. The force of the river will turn the current and throw it against the bank. Q. In the matter of turning the river, will it have any other effect on the bank at the turn? A. It will eat out this bank here by the barn; it isn't but about thirty feet from the bank. Q. Now, then, how does this land drain in particular? A. This part of it will drain back to this low land. Q. How wide is that road? A. About seven feet on top. Q. What kind of material is it? A. Sand; all loose sand. Q. The force of the river when it gets there—is it strong enough to stand the force of the river? A. No, sir."

One witness, Thomas, testified that the land appropriated for right-of-way was worth one hundred dollars an acre; that the farm of plaintiff was damaged by the shape the railroad left it $500, and by the difficult and inconvenient crossing of the railroad track, in the field as located, $150, and by the proximity of the railroad track to barn and residence, $130.

Much other testimony than that stated was adduced.

The court instructed the jury, over the objection of the defendant, as follows:

"In assessing the damages to the land in controversy you will consider all the evidence in the case, and determine the value of the land taken, the injury to the remaining land by inconvenient shape of fields for cultivation, the lessening of value by closing of natural outlets for water at high water season, if any, danger of fire to buildings, if any, annoyance of trains operating, if any, inconvenience of private crossing because of its location, if any, damage by reason of the changed condition of plaintiff's private road, if any, damage by reason of stagnant pools, if any, and interest on same since the taking of said land at the rate of six per cent. per annum."

And instructed them at request of the defendant as follows:

"The jury are instructed that, in determining the damages to be assessed in favor of the plaintiff, you will first consider what the fair market price value of the land actually taken by the railroad company was at the time the defendant entered upon the land and began to construct its road, about two years ago; and second, the damage, if any, sustained to the adjoining land of the plaintiff by reason of the construction of the road across it.   In determining the fair market value of the land actually taken you will be governed by the price at which you believe the land would have sold on the market in the ordinary course of sale at the time the defendant entered upon the land as above stated, if the owner desired to sell it and there was a purchaser who desired to buy it.   In determining the market value of the land you are warranted in considering, in connection with all the other evidence in the case, the location of the land, its productive qualities, and its rental value.   You are instructed that you cannot consider any damages caused to the plaintiff's property by the probability of overflow caused by the construction of defendant's roadbed or the wagon road dump on plaintiff's land, if you believe that such overflows could not occur except through an unusual or unprecedented condition or rise in the stream."

The jury returned a verdict in favor of the plaintiff for $1,250.

The defendant moved for a new trial, because the court erred in allowing plaintiff to introduce in evidence the questions and answers to them copied in the opinion; and because the court erred in giving the instructions asked for by the plaintiff.

The motion was overruled; judgment was rendered according to this verdict, and the defendant appealed.

No exception to the questions and answers mentioned in the motion for a new trial was preserved in the bill of exceptions. The defendant objected to a part of them, but, before the court ruled upon his objection, withdrew it until later, saying it would reserve its right therein. But it never renewed it unless it be in the instruction given at its request, which seems to apply. Without this testimony the damage done by the appropriation of land, by the division of the farm into two parts of inconvenient shape, by the crossing of the railroad track, and by the proximity of the railroad track to residence and barn, was shown by the undisputed evidence, at the least estimate, to exceed the amount of the verdict. So appellant does not have any cause to complain, on this account, of the admission of the testimony in question.

The objection to the instruction is in these words: "the lessening of value by closing of natural outlets for water at high water season, if any." This objection is not tenable. The railroad in this case was completed across appellee's land at the time this action was commenced. According to decisions of this court, damages caused by such obstructions before the bringing of an action for damages on account of the appropriation of land for the building of a railway are recoverable in such action. *Springfield & Memphis Railroad* v. *Rhea,* 44 Ark. 262; *Springfield & Memphis Railroad Co.* v. *Henry,* 44 Ark. 360; *Bentonville Railway Co.* v. *Baker,* 45 Ark. 253; *Newgass* v. *Railway Company,* 54 Ark. 145; *St. Louis, I. M. & S. Ry. Co.* v. *Anderson,* 62 Ark. 360.

Judgment affirmed.