ARKANSAS STATE HIGHWAY COMMISSION
v. VonDon DIXON ET AL

5-4914                                      444 S. W. 2d 571

Opinion delivered September 15, 1969

*Thomas B. Keys* and *James N. Dowell,* for appellant.

*Felver A. Rowell, Jr.,* for appellees.

CONLEY BYRD, Justice. Appellant Arkansas State Highway Commission on Aug. 3, 1967, filed its complaint and declaration of taking for 12.66 acres out of a 200 acre tract owned by appellees Vondon Dixon and Ruby Lee Dixon, his wife. The estimated just compensation was $4,500. The taking left 9.55 acres south of the interstate highway and 177 acres on the north. The Highway Commission appeals from a jury verdict of $12,000 and for reversal contends:

I. The trial court erred in permitting testimony calling for special knowledge or skill to be given by non-experts.

II. The court erred in not striking testimony of Appellee's witnesses basing opinion evidence as to value upon speculative elements.

III. The trial court erred in permitting testimony of special damages which had not been plead.

IV. There was no substantial evidence to support the verdict.

Mr. Frank Fougerousse, Jr., a witness on behalf of the Dixons, testified that he had lived near the property since 1937 and now farmed adjoining lands. He testified that prior to Aug. 3, 1967, the lands drained well but after construction of Interstate 40 a drainage problem existed because the Highway Department had attempted to drain the lands from east to west whereas they originally drained toward the east. He stated that this will create a condition where one cannot work the land when it is wet and that the wetness will smother out and scald the crops, once the crops are up. He based his state-

ments upon his knowledge of the land and his knowledge of farming.

Mr. Audie Stobaugh, a farmer, testified that he was familiar with the land prior to Aug. 3, 1967, and that it was all cleared. Drainage before the taking was from the south and toward the east and the Highway Department was attempting to drain the water back to the west and from the naked eye it looked like it was uphill. He discussed comparable sales in the vicinity and arrived at a value of $400.00 per acre before the taking. He placed little or no value on the 10 acres south of the interstate because of its inaccessibility and damaged the 177 acres north of the interstate at $50.00 per acre.

Mr. A. J. Gordon, president of the board of Central Arkansas Production Credit Association, testified that he was farming 2,000 acres per year and that he had personal knowledge of the Vondon Dixon property and had for about 20 years. He had viewed the property after the construction and after a 2½ inch rain that occurred a week or week and a half before the trial. Mr. Gordon placed a value of $400.00 per acre on the land before the taking based upon the 80 acres McKinnon bought from Ward Jackson. He placed a value of $350.00 per acre on the north 177 acres after the taking because of the drainage problem he observed, and a $50.00 per acre value on the 10 acres south of the interstate, because of its inaccessibility.

Mr. Forrest Griswood qualified as an expert on valuations. He appraised the lands at $60,000.00 before the taking and $49,268.50 after the taking, for a total damage of $10,731.50. He states that he deducted $25.00 per acre on the 177 acres north of the interstate because of the drainage problem which he had viewed.

Mr. Vondon Dixon stated that he had no problem with drainage on the farm lands prior to Aug. 3, 1967. Since Aug. 3, the drainage had been considerably

changed, in that the State Highway Department had put in a drainage ditch north of the farm access road trying to drain the water from the 200 acres which naturally drained east. That the Highway Department was trying to drain the water back west which it was unable to do because of a rise in the soil from the eastern corner going west. He placed a valuation of $400.00 per acre on the tract before the taking and arrived at an after valuation of $53,622.00 for a total damage of $26,378.00. In arriving at his damages he depreciated the 177 acres on the north $100.00 per acre and the 10 acres on the south by $350.00 per acre.

Mr. Kerry Caviness, a registered professional engineer in the employ of the Highway Department, testified that the interstate was constructed according to plans at the time of filing the action and that the drainage as provided for in the construction plans would not properly drain the area. He stated that the drainage problem was an oversight rather than an error and came about because of a mistake with reference to the contour of the land. He had known about the oversight for a month or more before trial. He stated that the Highway Department had put in some drainage tile on Saturday before the trial on Monday which, together with a ditch that was to be dug, would solve the drainage problem. According to him, no change order was necessary to do the small amount of work involved.

Mr. W. E. Hayes and Mr. Zack Mashburn were called as expert witnesses on valuation for the Highway Department. Mr. Hayes arrived at a before value of $60,000.00 for the 200 acres and an after value of $55,500.00, for a total damage of $4,500.00. Mr. Zack Mashburn gave a before value of $55,000.00 based on a $275.00 per acre valuation and an after value of $50,300.00, for a total damage of $4,700.00. Both witnesses with commendable candor admitted that their valuations were based upon assumptions that drainage would be equally as good after as before.

Point I. Appellant argues upon the authority of *Kansas City, Ft. Scott & Memphis Railroad Co. v. Cook,* 57 Ark. 387, 21 S. W. 1066 (1893), and *St. Louis, Iron Mt. & Southern Railway Co. v. Lyman,* 57 Ark. 512, 22 S. W. 170 (1893), that it was error for appellees and their witnesses to be permitted to give an opinion about the drainage problem. We find appellant's contention to be without merit because in this instance the witnesses testified to "matters determinable by conditions they had seen and described." Such information does not call for special knowledge or skill and does not constitute opinion evidence.

Point II. Appellant argues that the testimony of appellees' witnesses with reference to damages caused by the drainage problem was upon an improper basis —*i. e.,* the damages were speculative because based upon matters that would occur in the future or that came into existence because of faulty construction after the filing of the complaint. In this connection it cites 4 Nichols on Eminent Domain, § 14.245(1), where it is said: "If the damage for which recovery is sought is the result of improper, unlawful or negligent construction or maintenance recovery may not be had therefor in the proceeding; the owner is relegated in such case to common law action for damages."

Neither the record nor appellant's own witness sustains its position here. The record shows that the highway was in place at the time of trial and appellant's registered professional engineer testified that it had been constructed according to the plans and specifications in existence on the date of taking. Certainly the drainage or impairment of drainage to land is a matter that a willing buyer and a willing seller would consider, and under our decision in *L. R. Junction Ry. v. Woodruff,* 49 Ark. 381 (1887), this would constitute an element of compensation due in an eminent domain action.

Point III. In contending that the trial court erred

in permitting testimony relative to special damages which had not been pleaded, the Highway Department again relies upon the proposition that the proof was based upon damage that will occur in the future or that came into existence after the filing of the complaint in condemnation. Here again we can find no error. The requirement for pleading of special damages is to prevent surprises. In this instance the Highway Department claimed no surprise nor asked for a continuance. The record shows that the Highway Department had known about the drainage problems for more than a month and that it had its registered professional engineer standing by to testify.

Point IV. Contrary to appellant's contention, we find there was substantial evidence to support the verdict. Actually appellant's argument is here based upon the proposition that the poor drainage was not a permanent condition. In this we point out that the landowner was entitled to rely upon the fact that the highway was constructed in accordance with the plans and specifications on file and that until such time as the Highway Department moved to amend the plans and specifications the trial court did not commit error in permitting the witnesses to testify to the damages that arose as a result thereof.

Affirmed.