ARKANSAS STATE HIGHWAY COMM'N *v.*
GEORGE HARTSFIELD ET UX

5-5218                                           454 S. W. 2d 82

Opinion delivered May 25, 1970

*Thomas Keys,* and *Virginia Tackett,* for appellant.

*James Pilkinton,* for appellees.

J. FRED JONES, Justice. Under the power of eminent domain, the Arkansas State Highway Commission condemned a 35 foot strip of land across the end of two lots belonging to Mr. and Mrs. Hartsfield on which they have their home near Hope in Hempstead County,

Arkansas. A jury trial resulted in a judgment on a verdict in favor of Mr. and Mrs. Hartsfield for damages in the amount of $8,000. The highway department has appealed and relies on the following point for reversal:

"The verdict is excessive and there is not substantial evidence to support it."

The property involved was taken for the purpose of building an access road from the appellees' property, and property south of it, to Highway No. 29, upon which access was being controlled in connection with an interchange between new Interstate Highway No. 30 and old Highway 29. Two expert witnesses testified for the appellees and two testified for the appellant.

Mr. Charles Wilburn, an expert witness for the appellee landowners, testified that in his opinion the market value of the property was $12,300 before the taking and $1,500 after the taking, leaving a damage to the property in the amount of $10,800. He testified that he compared the Hartsfield property with comparable sales of other property in arriving at his before and after value. He described the appellees' house as a 19 year old single story modern five room house having two bedrooms, one bath, and five clothes closets. He described the house as having a brick curtain wall foundation, as having well-kept hardwood floors, and as having a fairly new roof. He described the front yard, prior to the taking, as containing flower beds, shade and pecan trees, with access from the road onto Highway 29 over a gravel driveway practically level with the highway. He described the taking as coming within seven feet of the front wall of the house and two and one-half feet from the front steps. He described a frontage road being constructed on the strip taken, and also described a chain link fence erected between the frontage road and Highway 29, as a part of the controlled access feature. Mr. Wilburn testified that it will be necessary to drive over the service road a distance of approximately 540 feet around one end of the fence

in order to gain access to Highway 29. He says that the service road had been built within a few feet of the appellees' house, and that the utility gas line, water line and electric lines have been moved to an area between the service road and the house. He says prior to the taking there was adequate drainage and that since the taking there is no room for culverts without interfering with the utility lines.

On cross-examination Mr. Wilburn testified that the value of the property would not be enhanced for industrial use because of the controlled access. He was not asked on cross-examination concerning any of the comparable sales he said he considered in arriving at his conclusion as to value. He was questioned concerning the sale of the "Messer property" but testified that he did not consider the sale of the Messer property as a comparable sale because it occurred six years prior to his appraisal, and that he did not consider the sale of the Messer property among the comparable sales he did consider in arriving at his opinion as to the market value.

Mr. P. M. Brown, the other witness who testified as an expert for the appellees, described the property and the location on the highway before and after the taking about the same as did Mr. Wilburn. He testified to a before value of $12,000 and an after value of $2,050, leaving a difference of $9,950. Mr. Brown also testified that he found and considered other comparable sales in arriving at his conclusion as to the before and after market value of the appellees' property. On cross-examination this witness was asked no question concerning comparable sales.

Mr. Kenneth McMurrough, an appraiser, and one of the expert witnesses for the appellant, testified that it was his opinion that immediately prior to the taking the market value of the property was $9,000, with $2,100 of that amount attributable to the value of the plot and $7,400 attributable to the building and improvements on the property. He testified that

the remaining value of the property after the taking would be $6,700, which would leave $2,800 as damages because of the taking. Mr. Charles Scott, the appellant's other expert witness, testified that in his opinion the market value of the property prior to the taking was $10,300, and that after the taking its value was $7,250, leaving a difference of $3,050, which he considered to be the damage because of the taking.

Most of appellant's argument in support of the point it relies on, is directed to the inadequacy of testimony pertaining to comparable sales. The appellant complains that the expert witnesses for the appellees "were satisfied with saying that they *did* find comparable sales . . . but did not go so far as to even identify the parties." The appellant seems to overlook the fact that these witnesses were testifying as expert land appraisers, and that having so qualified, their *opinion* evidence, within the bounds of their expertise, would be acceptable in evidence even without giving the basis for the opinion. The testimony of an expert, like the testimony of any other witness, is open to attack on cross-examination and is subject to contradiction by direct testimony. The appellant's argument in this connection is thoroughly answered in our very recent decision of *Ark. State Highway Comm'n* v. *Dean,* delivered on December 1, 1969, 447 S. W. 2d 334. The pertinent parts of that opinion are well stated in the last four headnotes, as follows:

". . . The testing of the probative weight of an expert's estimate of value necessarily requires a liberal latitude of inquiry into the factors and considerations upon which it is based.

. . . Where the burden imposed upon appellant to demonstrate the lack of basis for witness's opinion, or the weakness thereof, was heavy in view of the witness's qualifications and studies, the latitude of permissible cross-examination should have been great.

. . . The object of cross-examination is to weaken or disprove the case of one's adversary, break down his testimony in chief, test the recollection, veracity, accuracy, honesty, and bias ·or prejudice of the witness, his source of information, his motives, interest, and memory, and exhibit the improbabilities of his testimony.

. . . Limitation imposed by the trial judge upon Highway Commission's cross-examination of landowners' expert witness on real estate values held error."

The appellant had considerable latitude available to it on cross-examination in determining what comparable sales the witnesses were referring to when they testified that they considered such sales. The appellant could have ascertained by cross-examination the identity of the parties and the prices obtained in the sales the witnesses considered as comparable had the appellant considered such testimony important and desirable in the cross-examination of the witnesses who had testified as to comparable sales. It would appear that the appellant was the one who was satisfied with the testimony offered by the appellees' witnesses that they did arrive at their conclusions as to market value through comparable sales.

We conclude that the judgment of the trial court is supported by substantial evidence and we are unable to say that the jury verdict for $8,000 and the judgment entered thereon is excessive.

The judgment is affirmed.