# ARKANSAS LOUISIANA GAS COMPANY *v.* McGAUGHEY BROTHERS, Inc.

5-5581                                    468 S. W. 2d 754

Opinion delivered June 28, 1971

*Hout, Thaxton & Hout,* for appellant.

*Pickens, Pickens & Boyce;* By: *Tim F. Watson,* for appellee.

JOHN A. FOGLEMAN, Justice. Arkansas Louisiana Gas Company appeals from a jury award of $28,314 as compensation for lands of McGaughey Brothers, Inc., taken by eminent domain for installation, maintenance and operation of a 24-inch underground gas pipeline. McGaughey Brothers owned and operated 3,586 acres of farmland located on the east bank of the White River. Crops produced were rice, cotton, soybeans and feed crops. 870 acres were in improved pasture over which there were unimproved roads. The owners of the farm-

ing corporation maintained a herd of 200 to 250 brood cows with calves and replacement heifers.

Appellant took 3.45 acres in fee simple upon which it erected a tower 168.5 feet high to support a pipeline suspended over White River, 20.4 acres as permanent right-of-way easement 80 feet wide for an underground pipeline, and temporary ingress, egress and "regress" for construction purposes over appellee's private roads, the area of which totalled 26.4 acres. This pipeline was located north of and parallel to six 10-inch pipelines on the McGaughey property, which converged into one line on that farm. 15 acres of unharvested soybeans were damaged as a result of the pipeline construction.

Appellant argues that the circuit court erred in permitting appellee to introduce evidence of damages to the private roads during the period of construction and the cost of their restoration, over its objection. It asserts that error was committed in admitting testimony about the condition of the roads after appellant's work had been completed. It contends these were special damages which had not been pleaded. We have held, in a case where a railroad constructed its tracks upon a right-of-way which it used for a short time and then removed its tracks and abandoned the right-of-way, the measure of damages to the landowner was the rental value of the land taken, in the condition it was when taken, for the time it was occupied, its depreciation in value by reason of timber cut and other acts done thereon by the railway company and the damages to the remainder of the owner's land resulting from the building of the road across it and from flooding or overflow caused by the construction. *Pine Bluff & W. Ry. Co.* v. *Kelly,* 78 Ark. 83, 93 S. W. 562.

Whenever the contemplated construction for which a right-of-way is taken has not been completed, damages are assessed upon the presumption that it will be built with skill and proper precautions; however, if construction is complete at the date of the trial, the jury may consider the state of facts then existing in the light afforded by actual construction. The assessment of dam-

ages embraces all past, present and future damages, including those arising from faulty construction, which the location of the facility for which the right-of-way is taken may reasonably produce. *Springfield & Memphis Railway Co.* v. *Rhea,* 44 Ark. 258; *Missouri & N. A. Ry. Co.* v. *Bratton,* 92 Ark. 563, 124 S. W. 231. Such damages are not special damages which must be pleaded. In *Arkansas Central Railroad Co.* v. *Smith,* 71 Ark. 189, 71 S. W. 947, we said:

> Counsel for the company say that, if the pond was left upon the premises by the improper construction of the road, this would be an element of special damages, which could not be proved in this action, for the reason that there was no allegation to that effect, and no notice to the defendant of such a claim. This contention must be overruled, for, in the first place, there is no evidence and no contention that the road was improperly constructed. The mere fact that the excavation of earth for the road-bed left a pond of water does not necessarily show that the road was improperly constructed. But even if it did, it would make no difference for the road had already been constructed at the time of the trial; and it was for the jury to consider the state of facts then existing, and, with the light afforded by the actual construction of the road, determine what the damages were.

In *Arkansas Power & Light Co.* v. *Harper,* 249 Ark. 606, 460 S. W. 2d 75, we held that any error in the admission of testimony as to timber removed from a right-of-way and windrowed along and partially beyond its outside edges as evidence of unpleaded special damages was cured by the court's proper instruction as to the measure of the landowner's recovery. The correct instruction as to the measure of appellee's compensation was here as in *Harper,* as will be presently illustrated.

Assuming, however, that the damage to the roads constituted special damages which should have been pleaded, we cannot say that there was any prejudice to appellant, because it did not plead surprise or request a

continuance. When the trial court permits the introduction of evidence in face of an objection that the point at issue was not raised by the pleadings, the effect of the ruling is to treat the pleadings as amended to conform to the proof. *Bonds* v. *Littrell,* 247 Ark. 577, 446 S. W. 2d 672. So the trial court's ruling here was equivalent to treating the issue as if it had been asserted by a pleading amended at that stage of the proceeding. The purpose of requiring special damages to be pleaded is to prevent surprise. *Arkansas State Highway Commission* v. *Dixon,* 247 Ark. 130, 444 S. W. 2d 571. If appellant had pleaded surprise, when its objection was overruled, it might have been entitled to a continuance, if an issue of special damages not pleaded had arisen, in order to prepare to meet it. *Missouri Pacific Transportation Co.* v. *Williams,* 194 Ark. 852, 109 S. W. 2d 924. But where no surprise is pleaded and no time requested to prepare to meet the issue, there is no error. *Arkansas State Highway Commission* v. *Dixon,* supra; *Missouri Pac. Transp. Co.* v. *Williams,* supra; *Bennett* v. *Snyder,* 147 Ark. 206, 227 S. W. 402; *Ft. Smith Refrigeration & Equipment Co., Inc.* v. *Ferguson,* 217 Ark. 457, 230 S. W. 2d 943; *The Famous Store* v. *Lund-Mauldin Co.,* 149 Ark. 658, 233 S. W. 767; *Thomas* v. *Spires,* 180 Ark. 671, 22 S. W. 2d 553.

Appellant's second point for reversal relates to the giving and refusal of instructions relating to the measure of just compensation to the landowners. The circuit court gave appellant's requested Instruction No. 4, as follows:

Under the law, McGaughey Brothers, Incorporated, is entitled to recover the fair market value of the lands acquired by Arkansas Louisiana Gas Company, determined as of the 28th day of September, 1964, together with the difference, if any, in the fair market value of the remainder of the lands immediately before and immediately after the taking.

You will, therefore, ascertain the difference between the market value of the entire tract of land of McGaughey Brothers, Incorporated, before the taking

and the fair market value of the lands remaining in the tract after such taking, and that difference is the amount that McGaughey Brothers, Incorporated, is entitled to recover, and your verdict should be for McGaughey Brothers, Incorporated, in such amount.

When I use the expression "fair market value," I mean the price that the property of McGaughey Brothers, Incorporated, would bring on the open market in a sale between a seller who is willing to sell and a buyer who is willing and able to buy after a reasonable opportunity for negotiations.

Appellant's requested Instruction No. 5, which was refused, read:

In determining the amount of compensation to be paid to McGaughey Brothers, Inc., by Arkansas Louisiana Gas Company, you are to consider that the use of the lands acquired by Arkansas Louisiana Gas Company is limited to those uses for which they were acquired, and that McGaughey Brothers, Inc., has the absolute right to continue using the surface of the lands acquired for the right-of-way for other purposes not inconsistent with the use of the easement by Arkansas Louisiana Gas Company.

The court gave an instruction requested by appellee after modifying it to read as follows:

(Request)

You are instructed that Arkansas Louisiana Gas Company acquires by this Condemnation Proceeding the power to make such use of the 20.4 acre right-of-way across the property of the landowners as its present and future needs require for the purpose for which the right-of way is condemned, and Arkansas Louisiana Gas Company is liable to the landowners as though the lands were taken in fee simple or absolute title.

(Modification)

As to the 3.45 acreage, McGaughey Brothers have no further right or control. As to the 20.4 acres over which the Arkansas Louisiana Gas Company now holds an easement, the McGaughey Brothers, Incorporated, have the right to such use and control of the surface of these lands so long as the uses and purposes to which they are put are not inconsistent with the Arkansas Louisiana Gas Company's right to maintain and operate their pipeline.

Appellant first argues that the instruction given was erroneous because it made the condemnor "liable to the landowners as though the lands were taken in fee simple or absolute title," rather than "liable for the full market value of the land taken as if it were taken in fee simple absolute." This semantic argument is not well founded. We do not see how the jury could have been misled when the instructions are read as a whole. "As if" and "as though" are commonly accepted as conveying the same meaning. Webster's New International Dictionary, Unabridged, Second Edition.

Appellant's principal argument relating to these instructions, however, is based upon *Arkansas Power & Light Co.* v. *Mayo*, 244 Ark. 435; 425 S. W. 2d 531. There the court (three members dissenting) said that we could not be certain that the instructions given in a similar case did not confuse the jury as to the proper measure of the landowner's recovery. The court here, however, followed the teaching of *Mayo*. It is true that the appellee's requested instruction before its modification was quite similar in wording to the instruction requested by the landowner in *Mayo*, which we said might have been misleading and confusing to the jury when read with the instruction on the measure of compensation, given by the court, so that a double award might have resulted. The first paragraph of the instruction given by the court at appellant's request is virtually identical to the instruction which the condemnor had requested in *Mayo*, and which we said more clearly expressed the law than the court's instruction there, even

though the latter standing alone was correct. In view of the modification of appellee's requested instruction and the giving of the first paragraph of appellant's requested instruction, the two instructions read together were not likely to have confused the jury or misled it into a double award.

Appellant also alleges that the verdict is excessive because there is no substantial evidence to support it. We are unable to agree. Appellee's six witnesses stated differences in the market value of the property before and after the taking ranging from $45,100 to $67,671.35. No useful purpose would be served by outlining all the testimony. J. C. McGaughey, an officer, director and assistant manager of appellee, testified that the value of the lands taken totalled $10,732.50. He also testified that it was necessary to move $1,000 worth of dirt in to restore the roads used by appellant and to reblade and rework them. DeWitt McGaughey, also an officer and director of appellee, who was also its manager, said that it would cost $2,000 to get the roads in proper shape.

Appellant first attacks the substantiality of the testimony of these witnesses upon the ground that none of them mentioned any comparable sales. All of them qualified as competent to state opinions as to the market value of the lands. Having done so, they were not required to refer to comparable sales on direct examination or give the basis of their opinions. *Arkansas State Highway Commission* v. *Hartsfield,* 248 Ark. 821, 454 S. W. 2d 82; *Arkansas State Highway Commission* v. *Johns,* 236 Ark. 585, 367 S. W. 2d 436. The burden was upon appellant to demonstrate that the testimony of these witnesses was without any reasonable basis. *Urban Renewal Agency of Harrison* v. *Hefley,* 237 Ark. 39, 371 S. W. 2d 141; *Arkansas State Highway Commission* v. *Johns,* supra. As far as we can tell from the abstract of the testimony, none of the six witnesses was asked about comparable sales or the extent to which he relied upon them. Failure to cross-examine on this subject might be taken to mean that appellant was satisfied on this subject. *Arkansas State Highway Commission*

v. *Hartsfield,* supra. Appellant is in no position to contend that the testimony of any such witness was insubstantial because of his lack of knowledge of comparable sales. *Arkansas State Highway Commission* v. *Clark,* 247 Ark. 165, 444 S. W. 2d 702.

Appellant states that the reasons given by some of the witnesses for the reduction in value of appellee's remaining lands after the taking were:

> (1) during floods, appellee's cattle would have to walk around the tower erected on the land taken in fee or swim out through low land that admittedly was there before the acquisition by appellant; (2) speculation that appellant would continue to use appellee's private roads in the future and leave gates open, even though it is admitted that appellant has no further rights to the use of those roads; (3) supposed devaluation of improvements, even though the acquisition by appellant takes none; (4) the continuing right of appellant to traverse the right-of-way for maintenance purposes; (5) seepage and loss of drainage due to the pipeline, although a pipeline owned by another company is located parallel to appellant's pipeline and was laid long before appellant's pipeline was laid; (6) the tower located on the tract condemned in fee hinders the aerial application of chemicals on appellee's crop, although it was admitted that there were trees in the area; and (7) the nuisance factor is that the pipeline is "there."

Appellant then argues that the evidence in this case brings it within the ambit of *Texas Illinois Natural Gas Pipeline Company* v. *Lawhon,* 220 Ark. 932, 251 S. W. 2d 477, in the sense that nuisance or inconvenience to the landowner because of the presence of the pipeline constituted the principal basis for the opinions of the witnesses, so that there was no substantial basis to fully support the jury verdict. Granting, without deciding, that the value testimony of certain witnesses may have been subject to this infirmity, it is clear that the testimony of others was not shown to be. While not con-

trolling, it is significant that appellant not only did not challenge the qualifications of any witness to express his opinion as to values, but it moved to strike the testimony of only one of the six.

Appellee's witnesses testified that the cattle operation of McGaughey Brothers, Inc., like that of most of the neighboring farms bordering the river, was carried on along the river. From December to May, however, J. C. McGaughey testified that the cattle were pastured on about 1,500 acres of land on which soybeans were later planted. During times the river was at high stage, some of the lands were flooded.

According to J. C. McGaughey, prior to the taking, the cattle would go to the high ridge along the river as it rose, and walk to safety. The tower site, he said, covers a ridge so that it cannot be crossed by the cattle, and they would have to swim out if they were below the tower when the water rose. He said that there were four fences crossing the right-of-way designed to keep cattle out of crops. He could not accurately estimate the amount by which the improvements were devaluated. He also took into consideration the compounding of drainage problems due to the additional pipeline and inability to use a dragline for ditching across the right-of-way, problems connected with aerial application of insecticide, seepage problems due to the excavation for the pipeline and the fill and the attendant difficulty in maintaining dikes for flooding rice fields. He could not break the devaluation due to the last item into dollars and cents.

John Keel, a neighboring farm owner corroborated the existence of a drainage problem due to the impoundment of surface water by the fill over the pipeline. D. L. Buffington, a Newport real estate man, whose qualifications were admitted, placed the difference in values at $53,796.53. He considered as elements of damages to appellee's remaining lands: interference with the cattle operation (which he said was attributable to the fact that the tower effectively cut off 200 acres of the farm in high water); the probability that emergencies might

cause the condemnor to go across appellee's farmland, the only way by which the pipeline can be reached, without permission, which would involve time and trouble in a landowner's recovering damages; and aggravation of the drainage problems due to the additional pipeline. Buffington stated that if the cattle were cut off during high water and would not go through the water, the owners would have to take them out by boat or take them around by Tupelo or other such place. He was not asked to allocate a specific figure to any element.

In *Arkansas State Highway Commission* v. *Wallace,* 247 Ark. 157, 444 S. W. 2d 685, we said that a witness' testimony to a total compensation figure could not stand against a motion to strike if it included an impermissible element of damage, unless the amount improperly included can be distinguished. But we said that the witness should be afforded an opportunity to specify the amount improperly included. We denied a challenge to value testimony both by motion to strike and by the contention that the verdict did not have substantial evidentiary support, because each witness considered at least one element proper for the jury's consideration, but was not afforded an opportunity to specify the amount attributable to an improper element of damage. *Arkansas State Highway Commission* v. *Woody,* 248 Ark. 657, 453 S. W. 2d 45.

Both J. C. McGaughey and Buffington considered permissible elements of damage. The impoundment of surface water and impairment of drainage was a compensable element of damage. *Springfield & Memphis Railway Co.* v. *Henry,* 44 Ark. 360; *Arkansas State Highway Commission* v. *Dixon,* 247 Ark. 130, 444 S. W. 2d 571; *Miller Levee District No. 2* v. *Wright,* 195 Ark. 295, 111 S. W. 2d 469. So was the severance damage because of the inability of the cattle to travel from one part of the land to another, *Arkansas State Highway Commission* v. *Freyaldenhoven,* 246 Ark. 688, 439 S. W. 2d 791, and decreased value of improvements. *Miller Levee District No. 2* v. *Wright,* supra; *Donaghey* v. *Fones Brothers Hardware Co.,* 171 Ark. 1056, 287 S. W. 414; *Donaghey* v. *Lincoln,* 171 Ark. 1042, 287 S. W. 407.

Since these elements, and perhaps others,[1] were properly considered, we cannot say that the testimony of these witnesses was not substantial. Neither was afforded an opportunity to state the damage attributable to any impermissible element. We cannot say that their testimony was not substantial evidence.

The judgment is affirmed.

---

[1] Increased difficulty in cultivation of a farm by reason of obstacles to use of farm machinery by electric transmission lines and towers seems to be a recognized element of damages. *Illinois Iowa Power Co.* v. *Rhein,* 369 Ill. 584, 17 N. E. 2d 582 (1938); *Central Illinois Public Service Co.* v. *Lee,* 409 Ill. 19, 98 N. E. 2d 746 (1951); *Southwestern Public Service Co.* v. *Goodwine,* 228 S. W. 2d 925 (Tex. Civ. App. 1949). Aerial application of insecticides is a common farming practice. Increased difficulty in this practice increasing cost and diminishing efficiency would seem to fall in the same category.