W. T. FOSTER d/b/a FOSTER'S SALVAGE YARD *v.* ARKANSAS STATE HIGHWAY COMMISSION

75-32                                         527 S.W. 2d 601

Substituted Opinion on Rehearing
delivered May 27, 1975

[Rehearing denied September 2, 1975.]

*R. D. Rouse,* for appellant.

*William H. Trice, III,* for appellee.

JOHN A. FOGLEMAN, Justice. This appeal questions the holding of the chancery court that appellant's claim for compensation for removal of his junkyard to a place more than 1000 feet from Highway 82 constituted a suit against the state. Under the circumstances, we agree with appellant that it was not.

For a better understanding of the issues and our opinion, we should examine the statute under which the Arkansas State Highway Commission, the appellee here and plaintiff below, proceeded and our decision in *Arkansas State Highway Commission v. Turk's Auto Corp., Inc.,* 254 Ark. 67, 491 S.W. 2d 387. The pertinent portion of the statute, Act 640 of 1967, Ark. Stat. Ann. § 76-2517 (Supp. 1973), reads:

"The Commission is authorized and empowered to require the screening of any junkyard by natural objects, plantings, fences, or other appropriate means so as not to be visible from the main traveled-way of any Interstate or Primary State Highway, and authorized and empowered to require the removal from sight of any junkyard not so screened which is so visible from the main traveled-way of such Interstate or Primary State Highway. Provided, that when the Commission determines that the topography of the land will not permit adequate screening or the screening would not be economically feasible, then just compensation shall be paid for the relocation, removal or disposal of the following junkyards: (a) those lawfully in existence on October 22, 1965; (b) those lawfully along any highway in this State made a part of the State Highway System on or after October 22, 1965, and before the effective date of

this Act [June 29, 1967]; and (c) those lawfully established on or after the effective date of this Act. The Commission is hereby given the option of relocation, removal or disposal of affected junkyards and is also hereby authorized to make such payments, when in the best interests of the State. No compensation shall be paid for the relocation, removal, or disposal of any junkyards except those enumerated in this section; . . . ''

Appropriate language from *Arkansas Highway Commission v. Turk's Auto Corp., Inc.* follows:

The appellant, by a petition for mandatory injunction, sought to require the appellee, at its own expense, to screen its junkyard or remove it 1000 feet from the adjacent highway right-of-way. The appellee responded by asserting Ark. Stat. Ann. § 76-2513 et seq. (1971 Supp.) (Act 640 of 1967), which gives the appellant the asserted authority, is illegal, unconstitutional and void in that it purports to authorize the appellant to take appellee's property without due process of law and adequate compensation. The chancellor held the statute unconstitutional as applied to the appellee because it is in violation of our constitution which prohibits the taking of private property for public use without just compensation. For reversal the appellant contends ''[T]hat the trial court erred in holding Act 640 of 1967 unconstitutional as applied to the appellee, * * * and by denying and dismissing the appellant's petition for a mandatory injunction pursuant to the aforesaid act.'' We agree with the chancellor.

*****

It appears that for approximately twenty years this type of operation was conducted at the present location. The appellee has owned and operated this business since October 1, 1965, or before the enactment of the present legislation. The business fronted upon an existing highway within the city limits of West Helena, Arkansas. In 1966 or a year before the present Act, appellant, at its expense, constructed and completely screened the

500' frontage of appellee's salvage operation adjacent to the then existing highway so that the salvage yard was invisible to the traveling public. This screen was approximately 10' in height. About two years later the Helena Loop or bypass was constructed adjacent to another portion of appellee's property. This resulted in another public exposure of the existing junkyard. The appellant erected a transparent type chain link fence approximately 6' in height along the 677' frontage of this bypass. Subsequently, the appellant, pursuant to the rules and regulations as authorized by the provisions of Act 640 of 1967, demanded that appellee effectively screen the renewed exposure of its operation from the view of the traveling public. According to the appellee, its business investment totaled $100,000 and it would require an expenditure by it of approximately $7,000 to comply with the type of screen that the appellant had constructed at its own expense a few years previously on the other side of appellee's property. Appellee had insufficient space to "move back 1000 feet."

The narrow issue posed is whether the imposition of this expense upon the appellee is a taking or exaction of his property rights without just compensation and due process of law.

It is undisputed that at the time of the enactment of the Act in question the appellee was conducting a lawful business. Article Two, Section 22, of the Constitution of our State provides:

"The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation."

It was aptly said in *Ark. State Highway Comm.* v. *Union Planters National Bank*, 231 Ark. 907, 333 S.W. 2d 904 (1960):

" 'The general rule at least is that while property may

be regulated to a certain extent, if regulation goes too far it will be recognized as a taking . . . We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.' "

\*\*\*\*\*

In the case at bar, we do not construe *Bachman v. State*, supra, as being broad enough to permit the enactment and enforcement of legislation which would require the appellee, whose business was in lawful existence at the time of the passage of this Act, to be burdened with the expense of screening his property upon the relocation of the highway. The Act actually recognizes that just compensation "shall be paid" to the owner of a junkyard in certain circumstances. It provides "that when the Commission determines that the topography of the land will not permit adequate screening or the screening would not be economically feasible, then just compensation shall be paid for the relocation, removal or disposal" of junkyards lawfully in existence. Appellee's junkyard was lawfully in existence when the Act was enacted. Since the Act provides that, in the above enumerated instances, the owner "shall" be justly compensated, it is difficult to perceive why appellee should be required to screen his lawful business from public view without just compensation. We agree with the chancellor that the imposition of the cost of the screening upon appellee would be a deprivation of his vested property rights without just compensation and therefore, is unconstitutional as applied to him.

With this background, we review the history of the litigation. On October 29, 1970, the Highway Commission filed a petition for mandatory injunction against Foster. By this petition appellee asked that the court require appellant to screen his junkyard in accordance with its rules and regulations, so it would not be visible from the main

travelway of Highway 82, or, in the alternative, if this could not be effectively done, to remove it a distance of 1000 feet from the right-of-way of the highway. A decree was entered on December 20, 1971, upon default by failure of Foster to file an answer. The decree followed the prayer of the petition and required him, within 35 days, to either screen the junkyard or remove it.

After Foster was ordered to show cause why he should not be held in contempt for failure to comply with the court's order, he filed an answer and motion, alleging that, in compliance with the court's decree, he had removed and relocated his junkyard, that the same was legally in existence prior to October 22, 1965, and asked that a hearing be held to determine the just compensation due him. Appellee responded, alleging that appellant was not legally entitled to compensation for removal and relocation of the junkyard and prayed that the motion for compensation be denied. No contention was made that appellant's pleading was a suit against the state in the response or its supporting brief. Appellant filed a reply, alleging that the junkyard had been located for many years prior to October 22, 1965 on one acre owned by him and ten acres leased to him; that he had been given the alternative to remove and relocate his junkyard, that he, in good faith, relied upon the alternative; that appellee knew at all times that he was moving to a new location; that he, in good faith, thought he would be compensated; that appellee is estopped from contending that the junkyard could have been screened; that the portion of the act providing that appellee must find that the topography was not such that screening would adequately serve the statutory purpose or that screening would not be economically feasible is arbitrary, unreasonable and unconstitutional, being in violation of his rights under §§ 21 and 22, Art. 2 and § 1, Art. 7 of the Constitution of Arkansas and Amendment 14 of the Constitution of Arkansas. Appellant again asked that a hearing be conducted to determine the amount of compensation due him.

On August 19, 1974, a hearing was had on Foster's mo-

tion. Appellant testified that he had run a junkyard at the site on Highway 82 for about 20 years before he was ordered to remove it and he could not move 1000 feet from the highway and remain on the site. He said that he had there about 300 junk cars, 200 tons of scrap iron, a junk dragline, seven loads of used pipe, 5 old tractors without wheels, and a lot of other scrap metal on the yard.

There was no evidence that the Highway Department had ever made any determination, one way or the other, about the feasibility of screening the site. Its pleadings and the decree entered in the alternative are definite indications that no such determination had been made. Its "Environmental Control Coordinator Director" testified to the obvious fact that the department could pay compensation under Act 640 of 1967 if the yard existed prior to the passage of the act and could not feasibly be screened. Although witnesses for both sides testified that the site could feasibly be screened, an expert witness called by appellant testified that it would cost $17,000 to screen the old location. There was no other evidence as to the cost of screening. Appellant testified that he was unwilling to undergo the expense of screening someone else's land. He also said that he did not have enough room to move the junkyard 1000 feet from the right-of-way and still remain on this 11-acre tract. He said that the reason it took nine months to complete the removal and relocation was due to extremely bad weather conditions, the necessity for clearing underbrush and trees, digging a drainage ditch, building a road to the new site, which was low and swampy, and the difficulty experienced in moving the junk from the old site, which was also muddy and boggy.

Appellee contended that Foster had stood by and permitted the Highway Commission to appropriate his property or damage it, without making compensation therefor, so that his attempt to recover compensation was an action to compel the state to redress a past injury and a suit against the state prohibited by Art. 5 § 20 of the Arkansas Constitution.

There is no doubt about Foster's having a vested proper-

ty right in the use of the premises on which he had operated the junkyard for twenty years. See *Blundell v. City of West Helena,* 258 Ark. 123, 522 S.W. 2d 661 (1975). Regulation which unduly invades this right runs afoul of constitutional due process requirements and prohibitions against the taking of private property without just compensation. *Arkansas State Highway Commission v. Turk's Auto Corp., Inc.,* 254 Ark. 67, 491 S.W. 2d 387; *Bachman v. State,* 235 Ark. 339, 359 S.W. 2d 815; *Arkansas State Highway Commission v. Union Planters Bank,* 231 Ark. 907, 333 S.W. 2d 904. An action under Ark. Stat. Ann. § 76-2513 et seq. (Supp. 1973) is in the nature of an eminent domain action, and may constitute the taking of private property rights entitling the affected property owners to just compensation. *Arkansas State Highway Commission v. Turk's Auto Corp., Inc.,* supra. We held in *Turk's Auto* that the proceeding for mandatory injunction constituted a taking there. The same procedure here also constitutes a taking for which Foster was entitled to compensation.

Appellee's argument that appellant's claim for compensation in this proceeding made the state a defendant in the action in violation of Art. 5 § 20 of the Arkansas Constitution is not well taken. Appellant did not institute the action and the petition for mandatory injunction, when we look to its substance and prayer, itself performed the same function as a complaint in an eminent domain action, since appellant's vested property rights for which he was entitled to just compensation were being taken by the proceeding. It would be just as logical to say that a landowner who claimed the right to just compensation in an eminent domain action instituted by appellant was making the state a defendant in its courts. When the state becomes a suitor in her own courts, she is subject to the same restrictions as a private suitor, is treated as any other litigant and must submit to and abide by the results. *Arkansas State Highway Commission v. Partain,* 193 Ark. 803, 103 S.W. 2d 53; *Arkansas State Highway Commission v. Roberts,* 248 Ark. 1005, 455 S.W. 2d 125; *Arkansas Game & Fish Commission v. Parker,* 248 Ark. 526, 453 S.W. 2d 30; *Arkansas State Highway Commission v. McNeil,* 222 Ark. 643, 262 S.W. 2d 129. There was no immunity from liability in this case. See *Arkansas State Highway Commission v. Turk's Auto*

*Corp., Inc.,* supra. Furthermore, appellant's answer and motion did not constitute a counterclaim, as appellee contends, anymore than a similar pleading in an eminent domain action would have, so *Arkansas Department of Corrections* v. *Doyle,* 254 Ark. 102, 491 S.W. 2d 602, relied upon by appellant, does not apply.

Although appellee does not specifically argue that appellant's failure to file an answer within the statutory period bars his recovery, or constituted such standing by and permitting the state agency to take his property without compensation, as would relegate him to the State Claims Commission for relief, it has been suggested in our consultations. Appellant did not stand by and observe the taking and then institute an action to recover just compensation or to require the state to file a condemnation action or intervene in a pending suit between the state and other landowners, as was the case in authorities relied upon by appellee. The undisputed evidence is that Foster attended court time after time to report his activities in complying with the mandatory injunction.

The time for answer simply has no significance, except as appellant's acknowledgment that the state had a right to require him to screen his junkyard or move it. No answer is required in a suit by the state taking private property, unless the owner intends to claim special damages. *Arkansas State Highway Commission* v. *Lewis,* 243 Ark. 943, 422 S.W. 2d 866.

When the condemnor is put on notice of injuries which naturally flow from its taking, the damages resulting are not special damages. *Arkansas State Highway Commission* v. *Lewis,* supra; *Arkansas Cent. R. Co.* v. *Smith,* 71 Ark. 189, 71 S.W. 947. The special damages which must be pleaded in eminent domain proceedings are those which could not have been contemplated at the time of the taking. *Bentonville R.R.* v. *Stroud,* 45 Ark. 278; *Fayetteville and Little Rock Ry. Co.* v. *Hunt,* 51 Ark. 330, 11 S.W. 418; *Ft. Smith & Van Buren Bridge Dist.* v. *Scott,* 103 Ark. 405, 147 S.W. 440. See also, *Arkansas State Highway Commission* v. *Lewis,* supra. The only purpose of requiring the

landowner to plead special damages is to avoid surprise. *Arkansas State Highway Commission* v. *Dixon*, 247 Ark. 130, 444 S.W. 2d 571. In sustaining judgments for elements of damages in cases in which no answer was filed, the important consideration has been whether the condemnor was taken by surprise and whether it made a specific objection on that account. See *Arkanaas Louisiana Gas Co.* v. *McGaughey*, 250 Ark. 1083, 468 S.W. 2d 754; *Arkansas State Highway Commission* v. *Lewis*, supra; *Arkansas State Highway Commission* v. *Dixon*, supra; *Ft. Smith & Van Buren Bridge Dist.* v. *Scott*, supra; *Railway* v. *Hunt*, 51 Ark. 330, 11 S.W. 418.

There is absolutely nothing in this record to suggest that it could not and should not have been contemplated that appellant was entitled to damages for complying with the mandatory injunction. Appellant had not then specified or intimated that it sought to require screening only. The chancery court's order was in the alternative. When Foster moved for a hearing to determine the amount of his compensation he stated that he had removed and relocated his junkyard. His testimony that he met with the chancery judge and the Highway Department attorneys four or five times, reporting his progress and obtaining extensions of time because weather conditions impeded his moving, stands undisputed. Appellant was not surprised. It merely pleaded that Foster was not entitled to "any compensation for the removal of junked cars and other salvage from the premises in this cause pursuant to the order of the Court." The first mention of the adequacy of screening came in a brief filed by appellant in support of this response in which appellant argued that "the yard is as flat as a table and would readily lend to *removal or screening*". (Emphasis ours.)

Surprise was never asserted at the hearing and not a single objection was made by appellee to Foster's testimony, in the course of which he detailed the reason for his removal of the yard, the reason why screening would not be economically feasible, and the cost and expenses incurred. Furthermore, not a single objection was made to the testimony of Foster's expert witness who stated his opinion as

to the cost of moving the junkyard and the cost of screening the original site.

Foster testified that the cost of removal was $27,540. His expert witness testified that under normal conditions the cost would be $16,800. In arriving at this figure he did not take into account the inclement weather conditions or the muddy condition of the two sites on that account. Neither did he consider 100 days' use of a bulldozer to remove the junked cars from one site to the other. Foster testified that the bulldozer rental value was $50 per day and that the driver. normally earns $15 per hour. Nobody else testified on the subject.

The decree of the chancery court is reversed. This is a case, however, that we feel should be remanded to the trial court because the chancery court decided the case on the wrong legal theory. See *Rehsamen Company Inc.* v. *Arkansas State Hospital Employees Federal Credit Union*, 258 Ark. 160, 577 S.W. 2d 845 (1975). In order to do equity between the parties, the chancery court shall hear such additional testimony as the parties may offer on the subject in order to determine the amount of just compensation to appellant.

It is so ordered.

The Chief Justice and JONES, J., dissent.